982 So.2d 843 (2008)
STATE of Louisiana
v.
Darryl L. WHITE.
No. 07-KA-831.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2008.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli A. Herrle-Castillo, Attorney at Law, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
The defendant Daryl L. White appeals his conviction for unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4, and his 80-month enhanced hard labor sentence. He assigns as error the insufficiency of the evidence to convict him. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
The state charged Mr. White with the unauthorized use of a motor vehicle  a 1994 BMW  occurring on or about December 25, 2006. On June 18, 2007, a six-person jury found him guilty as charged. Ten days later, the trial judge sentenced the defendant to six years at hard labor. Thereafter, the state filed an habitual offender bill of information alleging that the defendant was a third felony offender. Mr. White denied the allegations. Six weeks later, on August 9, 2007, after being advised of his multiple offender rights, the defendant stipulated to being a third felony *844 offender. The trial judge accepted the stipulation, vacated the defendant's original sentence and sentenced him as a third felony offender to 80 months hard labor without benefit of probation or suspension of sentence.
The testimony at trial revealed the following. Around 10:00 p.m. or 10:30 p.m. on Christmas, December 25, 2006, Mr. Kamal Zeitoun, who was in Colorado at the time, received a telephone call. At the time, Mr. Zeitoun owned a used car dealership in Jefferson Parish. Mr. Yamil Hanon was the manager at that time. Mr. White had been employed there on an intermittent basis for approximately eight months. Mr. White, among other things, performed mechanic work on the vehicles. In addition, Mr. White, who was homeless, was allowed to sleep in one of the cars on the lot. But Mr. White had no means to remove that vehicle because he had no keys to the car and the car's position did not allow it to be removed.
The telephone call came from the owner of a gas station that was located about a half mile from the dealership. The owner related that he saw one of Mr. Zeitoun's cars with identifying stickers at his business. Mr. Zeitoun called Mr. Hanon. Mr. Hanon went to "Brother's Mart" and spotted Mr. White. Mr. White was seated in the driver's seat of the vehiclea 1994 BMWwith three or four other passengers. When he spotted Mr. White, Mr. White was parked in the parking lot. Mr. Hanon instructed Mr. White to leave his friends and drive back to the lot. Mr. Hanon had called the police who were at the lot when they arrived.
According to Mr. Zeitoun, Mr. White was only allowed to drive cars when accompanied by the owner or the manager. Mr. Zeitoun never gave the defendant permission to drive one of the vehicles at night. Mr. Zeitoun and Mr. Hanon testified that the keys for the vehicles were kept on a board in the office. Mr. Hanon took the keys home with him each night. Mr. Zeitoun testified that the manager was responsible for the keys and the cars. In his absence, Mr. Hanon had authority to make decisions on Mr. Zeitoun's behalf.
Although Mr. Zeitoun testified that the business was not open that Christmas Day, Mr. Hanon testified that he "believed" they were open. But he did not remember if he had been at the lot that day. Even so, Mr. Hanon stated that on that day no one had access to the keys except Mr. Hanon and Mr. White because the owner was out of town.
Mr. Hanon testified that he had last seen the BMW on the front line of the sales lot facing the street and the car had the business' stickers. He last saw the BMW key on the board. He did not give it to the defendant nor did he give the defendant permission to take the key or otherwise authorize him to take the key. He did allow potential customers to use car keys in order to test drive the vehicles.
Mr. Hanon explained the limited authorization that was given to Mr. White regarding driving the vehicles. Mr. White was not allowed to drive a car unless someone was with him. There was never any time that Mr. Hanon gave Mr. White permission to drive any vehicle without either Mr. Hanon or the owner being present with Mr. White. Mr. White was not allowed to move the vehicle off the lot without being accompanied by Mr. Hanon or the owner. Mr. Hanon stated that he "pretty much" accompanied the defendant each time Mr. White put gas in a car. Under these circumstances, the defendant was allowed to take a car to a nearby gas station"Wagners." To his knowledge the defendant did not have a driver's license at the time.
*845 During cross-examination, defense counsel referred to Mr. Hanon's police statement in which he stated the defendant "never" had permission to drive the vehicles off the car lot at any time. Mr. Hanon testified that Mr. White was not allowed to drive the cars unless someone was with him.
Mr. Hanon admitted that he had two driving while intoxicated convictions (DWI). He maintained that he always takes the keys with him. When Mr. Zeitoun called him that night, Mr. Zeitoun was angry and disappointed in Mr. Hanon. But, he had no reason to lie about the incident. Rather, he testified that the defendant worked for the business after the incident because he and the owner did not want to see Mr. White on the street.
Kenner Police Officer Gregory Smith testified he responded to a call at the dealership that night and he arrested Mr. White. After advising the defendant of his Miranda rights, Mr. White stated he understood the rights. The defendant told the officer he was concerned about getting paid because he took the car. Officer Smith understood that Mr. White was saying he took the car without permission. Although Mr. White did not actually use the word, "permission", he "[b]asically implied that he took the car." The defendant was concerned about his actions in taking the car and said that by taking the car, they would hold his check as punishment for doing so. Officer Smith, however, never asked Mr. White whether Mr. White had permission to take the car. Even so, the defendant made it plain to the officer that he was not going to get paid because he did something wrong.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the state failed to prove he lacked permission to take the car. The defendant points to a discrepancy between Mr. Hanon's police statement and his testimony regarding Mr. White's authority to drive vehicles. In the statement, Mr. Hanon said the defendant "never" had permission to drive the cars, while at trial he testified he could drive to get gas while accompanied by Mr. Hanon or the owner. Furthermore, the defendant asserts that the state failed to negate the reasonable hypothesis that he had permission from Mr. Hanon to drive the BMW because Mr. Hanon thought the out-of-town owner would never find out. When the owner became angry, Mr. Hanon had to deny giving Mr. White the authorization or face losing his job. Mr. Hanon likely convinced the owner to allow Mr. White to continue working in order to soothe his guilty conscience for hiding the fact that he gave Mr. White permission to take the BMW. Because the state failed to negate this reasonable hypothesis that Mr. Hanon gave the defendant permission to take the BMW, the evidence was insufficient. The state responds that the jury considered testimony and arguments at trial regarding this theory and reasonably rejected it.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Macon, 06-481 (La.6/1/07), 957 So.2d 1280, 1285 (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988)). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. Id. (citing State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35). A reviewing court may impinge *846 on the factfinding function of the jury only to the extent necessary to assure the Jackson standard of review. State v. Macon, supra, 957 So.2d at 1285-1286 (citing State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20). It is not the function of an appellate court to assess credibility or re-weigh the evidence. Id. at 1286. In addition, "where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, `assuming every fact to be proved that the evidence tends to prove.' La.R.S. 15:438; see State v. Neal, XXXX-XXXX, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)." State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 592, cert. denied, Draughn v. Louisiana, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). "The statutory requirement of La.R.S. 15:438 `works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.'" Id. (citation omitted).
"A reviewing court may intervene in the trier of fact's decision only to the extent necessary to guarantee due process of law." State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517, 521 (citation omitted). "In cases relying on circumstantial evidence to prove one or more elements of the crime, when the fact-finder reasonably rejects the hypothesis of innocence advanced by the defendant at trial, that hypothesis fails, and the verdict stands unless the evidence suggests an alternative hypothesis sufficiently reasonable that rational jurors could not find proof of the defendant's guilt beyond a reasonable doubt." Id. (citations omitted).
La.R.S. 14:68.4 provides, in pertinent part:
A. Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
This court has recognized a mens rea requirement or criminal intent based on State v. Bias, 400 So.2d 650, 652 (La.1981), a case involving a virtually identical statute  unauthorized use of a movable, R.S. 14:68.[1]State v. Joseph, 05-368 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, 1063. "[T]he `evil' state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381." State v. Bias, 400 So.2d at 652-53.
Consent
This case involves a situation where the defendant, an employee, was given consent to drive the dealership vehicles under certain limited conditions. For example, he could drive while accompanied by the manager or owner to get gasoline. The testimony at trial clearly established that on the night in question Mr. White did not have consent to drive the vehicle off the lot or to have consent to access the keys.
*847 Similarly, in State v. Varnado, 01-367 (La.App. 5 Cir. 9/13/01), 798 So.2d 191, 194, this Court upheld a conviction of an employee who used the employer's vehicle during the weekend without consent. There was testimony that employees were never permitted to take company cars home for the weekend. The Court concluded, among other things, that a rational juror could have found that the defendant took the company vehicle over the weekend without his employer's consent. Like the defendant in Varnado, Mr. White had used his employer's vehicle on the night in question without consent.
Furthermore, according to the police officer, the defendant made it plain to him that he was not going to get paid because he did something wrong. That statement indicates guilty knowledge.
Therefore, under the facts presented at trial, a rational juror could have concluded that the Mr. White took the dealership vehicle without his employer's or manager's consent.
Reasonable Hypothesis of Innocence
"The pertinent question on review [is] not whether the appellate court [finds] that defendant's hypothesis of innocence offered a reasonable explanation for the evidence at trial but whether jurors acted reasonably in rejecting it as a basis for acquittal." State v. Pigford, supra, 922 So.2d at 520.
At trial, defense counsel elicited testimony from Mr. Hanon that the owner expressed anger and disappointment when relating the incident to him. According to the owner, Mr. Hanon had the authority to act in his absence. Mr. Hanon admitted to previous DWI convictions. Mr. Hanon, however, maintained that the defendant did not have his consent to take the vehicle that night.
In essence, the defendant claims that Mr. Hanon's testimony is untruthful. However, the conviction herein shows that the jury accepted his testimony. This court will not second-guess the jury's credibility determination. See State v. Macon, supra, 957 So.2d at 1286. Furthermore, the jurors reasonably could have inferred that the defendant's statement to the officer supported the inference that he had taken the car without consent and that he had an awareness of wrongdoing.
Based on our review of the testimony, and considering all of the evidence in a light most favorable to the state, we find that the jury reasonably rejected the hypothesis of innocence advanced by the defendant. No other reasonable hypothesis of innocence was presented. We find that sufficient evidence was introduced at trial to establish all elements of the offense. Accordingly, this assignment lacks merit.

ERROR PATENT DISCUSSION
The defendant requests an error patent review. The state responded there are no errors patent.
This Court routinely reviews the record for errors patent regardless of whether the defendant makes such a request. La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review in this case reveals no errors patent.

DECREE
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] R.S. 14:68 provides in pertinent part:

A. Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.