STEPHEN J. WINDHORST, Judge.
12Pefendant, Khanh Le, along with co-defendant Katherine Le, was charged with the intentional discharge of a firearm during the commission of an aggravated assault and/or aggravated criminal damage to property, wherein it was foreseeable that it may result in death or great bodily harm, in violation of La. R.S. 14:95F. Both proceeded to trial by jury, after which defendant Khanh Le was found guilty and Katherine Le was found not guilty. Defendant was sentenced to 15 years imprisonment with the Department of Corrections, to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals his conviction and sentence.
FACTS ADDUCED AT TRIAL
On October 4, 2009, gunshots were fired into Club Fusion located on Lapalco Boulevard in Harvey. Three eyewitnesses, Kevin Smith, Kim Bui, and Dianna Luong, named defendant as the shooter.
At the time of the incident, Club Fusion was managed by Dianna Luong, mother of the registered owner, who also served as the club’s bartender. Kim Bui, also a daughter of Ms. Luong, worked as one of the waitresses at the club. Kevin Smith worked part-time, on weekends, as the club’s doorman.[1] Ms. Luong testified that defendant and Ms. Le were frequent patrons of the club, and went there every weekend.
^Approximately two weeks before the shooting, defendant was banned from the club because of a riot that started inside the club and escalated into a fight in the parking lot.[2] Mr. Smith testified that he has known defendant for two years from defendant’s weekly visits to the club, and that “every time he comes to the club, he always cause [sic] problems.”
On the night of the shooting, defendant attempted to enter the club five times but Mr. Smith prevented him from doing so, explaining that he was “not welcome there.” Defendant eventually walked away towards the parking lot. Meanwhile, defendant’s wife, co-defendant Ms. Le, was inside the club where she got into an argument with one of the customers and Mr. Smith was called to escort her outside. Once Ms. Le was outside, Mr. Smith went back inside the club to make sure “everything was straight.” When Mr. Smith went back towards the open front door of the club he observed defendant with a gun in his hand. Mr. Smith then saw defendant start shooting inside the club. When the shooting started, he closed the front door and took cover. Mr. Smith testified that Ms. Le was outside at the time of the shooting but could not recall if Ms. Le was standing next to defendant at the time of the shooting. After the shooting ceased, Mr. Smith saw defendant leave in a white SUV. He did not see Ms. Le leave with defendant.
*310 Kim Bui testified that on the night in question, defendant and Ms. Le entered the club and sat down at a table together, but at some point were asked to leave. Ms. Bui testified that she went outside to smoke a cigarette and heard Ms. Le yelling at defendant to “shoot at the place.”[3] Defendant and Ms. Le were standing |4in front of the club, by the door, when defendant started shooting. When the shooting started, Ms. Bui ran back inside the club. Ms. Bui testified that there were over 50 people in the club that night, and when the shots were fired it was “complete chaos.” She was positive that defendant was the individual who fired the shots into the club. Ms. Bui testified that she is familiar with defendant and Ms. Le from their occasional patronage at the club. She testified that she is afraid of defendant and Ms. Le and in the past she has attempted to get a restraining order against them, but she was told they could not get one “on the business because it’s a public place.” Ms. Bui admitted at trial that it was not until a week before trial that she told the prosecutor that she had witnessed the shooting.
Ms. Luong testified as to the events as follows. On the night of the incident, Ms. Le entered the club and “picked a fight” with a woman. As a result, Mr. Smith escorted Ms. Le out of the club. Defendant also tried to enter the club but Mr. Smith would not let him inside. Ms. Luong testified that she was standing by the front door, which was open, when she heard Ms. Le tell defendant to “shoot them.” In response, defendant pulled out a gun and fired about “six rounds.” After the first shots were fired, she ran to one of the side doors in the club and looked outside where she saw defendant still shooting and then observed defendant and Ms. Le flee towards the parking lot.
Lieutenant Mike Kinler, of the Jefferson Parish Sheriffs Office, testified that on October 4, 2009, at approximately 3:30 A.M., he also responded to the shooting at the Fusion Club. Upon arrival at the scene, Lieutenant Kinler identified and interviewed several potential witnesses. From his conversations with various witnesses he was able to identify a potential suspect. The shooter, |5known by Mr. Smith, the club’s doorman, as “Kenny”[4] was said to have left in a white Mercedes SUV. The mention of a gold Honda vehicle was also made by various witnesses, however, Lieutenant Kinler could not recall who provided this information. Lieutenant Kinler also indicated that reference to a gold Honda was also recorded on one of the 911 transcripts. The officers searched for the gold Honda and white Mercedes SUV at a nearby club known as Club Hawaii where defendant was known to frequent, however, the club was closed when they arrived. Both defendant and Ms. Le admitted that they were the owners of a gold Honda Accord.
Ms. Luong also testified that at some point after the shooting, defendant told Ms. Luong that he was “sorry” and asked her if she would drop the case. She also testified that a week before trial defendant called her and told her that she “point [sic] the wrong person that night of the shooting.”
The defense presented a different version of the events at trial. Defendant took the stand on his own behalf and testified that on the night of the shooting, he and *311 Ms. Le went to Club Hawaii between 11:00 P.M. and midnight. The two rode to Club Hawaii together in their gold Honda Accord. Once at Club Hawaii they met up with two friends, Mr. Thovan Do and Ms. Kim Nguyen. While there, defendant and Ms. Le got into an argument and Ms. Le left the bar in their car. Defendant believed she was likely going to the Fusion Club. When defendant was ready to leave, he called his friend Loan Le, who came and picked him up from Club Hawaii between 4:00-4:30 A.M. His friend took him to her home where he spent the night. This testimony was corroborated by Mr. Do and Ms. Nguyen. However, both admitted at trial that they never reported this information to the |6police. Mr. Do further testified that since the shooting incident he had seen both defendant and Ms. Le in the Fusion Club about eight or nine times.
Loan Le testified that between 4:00 and 4:30 a.m., defendant called her and asked her to pick him up at the Hawaii Club and take him home. She picked him up at the Hawaii Club and took him to her house where defendant spent the night. She testified that they did not stop at the Fusion Club on the way home.
Defendant’s wife, Ms. Le, also testified that on the night of the shooting, she and defendant drove to Club Hawaii between 11:00 P.M. and midnight in her Honda Accord. Ms. Le testified that she left Club Hawaii after seeing her husband “talking to another woman.” She then drove to the Fusion Club by herself. Once inside the club, she and the waitress from the prior September 2009 altercation exchanged words and Ms. Le was asked to leave by Ms. Luong and Mr. Smith. As Ms. Luong and Mr. Smith were escorting her out, she heard gunshots. Ms. Le testified that they were inside, a foot away from the front door, when the shots were fired. After the gunshots ceased, she ran to her Honda Accord and left the club. She testified that she never saw defendant at Club Fusion that morning, nor did she yell out for him to “shoot.”
Alice Tran, the owner of Club Hawaii, testified that she had known defendant and Ms. Le for eight or nine years. On the night of the shooting, she closed her bar between 4:00 and 4:30 A.M. Ms. Tran testified that she saw defendant and Ms. Le in her bar that night. According to Ms. Tran, Ms. Le left the bar early and defendant left sometime after her. Ms. Tran was not certain, but she believed defendant left her bar approximately 30-45 minutes before she closed. However, Jefferson Parish Sheriffs Officer James Carrigan testified that at 4:10 A.M. on the morning of the shooting, he went to Club Hawaii to check for a gold Honda and a white Mercedes SUV, and the Club was closed when he arrived.
| ^Defendant also testified at trial that he did not own a white Mercedes SUV. He admitted that he was the owner of a white Acura MDX, which was in a repair shop on the night of the incident. Dung Tran, the owner of the Barataría Collision Center, located in Marrero, testified that he had known defendant for 15 years. Mr. Tran testified that defendant brought in his 2006 white Acura MDX to be repaired in January of 2009, and that two years later, the vehicle was still in his shop because defendant could not pay the bill. Mr. Tran testified that he took the main fuse out of the car so it could not be driven. On cross-examination, Mr. Tran testified that defendant had abandoned the vehicle and left him with the bill.
In contrast, Deputy Jeffery Reynolds testified that he had responded to a disturbance call two weeks before the shooting. The defendant and Ms. Le were each involved in the disturbance, which was a *312 different incident from the September 2009 altercation in the parking lot. Once there, Deputy Reynolds had to place defendant inside his vehicle, which was a white Mercedes SUV. When Deputy Reynolds was investigating the instant shooting, the “owner” of the club advised him that the man he had placed in the white Mercedes SUV before “was the guy that did the shooting.”
Finally, both defendant and Ms. Le testified that they were angry with Ms. Luong, who they believed was the owner of the club, because she stood up for the waitress instead of Ms. Le, whom they claimed caused the September 2009 altercation. Sometime after that altercation and before the instant shooting, Ms. Le reported claims of illegal activities with the Health Department, IRS and “Medicare.” As a result of the complaint lodged with the Health Department, the Fusion Club’s kitchen was shut down. On cross-examination, Ms. Luong admitted that the Health Department closed down her kitchen after Ms. Le reported her to |sthe authorities. Also, on cross-examination, Ms. Luong denied that prostitution, gambling, and drug transactions went on at the club.
SUFFICIENCY OF EVIDENCE
In his second assignment of error, defendant argues that insufficient evidence exists to support his conviction. Defendant does not dispute that there was a shooting at the Fusion Club on October 4, 2009. Rather, defendant argues that the evidence was insufficient to prove he was the person that committed the offense. Specifically, defendant maintains that the State’s case was riddled with inconsistencies, that the State’s witnesses, Ms. Luong, Ms. Bui, and Mr. Smith, had strong motives to lie, and that a number of defense witnesses placed defendant away from the Fusion Club at the time of the shooting.
In response, the State argues that through the eyewitness testimony of Ms. Luong and Mr. Smith, it proved beyond a reasonable doubt that defendant was the individual who fired gunshots into Club Fusion. The State further asserts that the jury was made aware of the alleged testimonial inconsistencies and the State’s witnesses’ motivations to lie, and nonetheless chose to believe the State’s witnesses as to defendant’s identity as the shooter.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. Under the \cJackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. Rather, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.; Jackson, 443 U.S. at 319, 99 S.Ct. 2781; See also State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, *313 690. It is not the function of the appellate court to assess credibility or re-weigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. In other words, circumstantial evidence is evidence which proves a fact, and from that fact one may indirectly but reasonably and logically conclude another fact which is sought to be proven.
When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Id. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Wooten, 738 So.2d at 675.
Defendant does not contest that the State failed to prove the elements of the crime for which he was convicted. Defendant challenges his conviction for illegal use of a firearm during the commission of a crime of violence, a violation of La. R.S. 14:94F,[5] on the basis that the evidence was insufficient to prove his identity as the perpetrator of the offense.
When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Long, 408 So.2d 1221, 1227 (La.1982); State v. Searls, 04-790 (La.App. 5 Cir. 1/25/05), 895 So.2d 40, 43. A positive identification by only one witness is sufficient to support a conviction. State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d *314 297 (citation omitted). A reviewing court may impinge on Inthe fact-finder’s discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Harris, 02-1589 (La.5/20/03), 846 So.2d 709, 713 (citing State v. Mussall, 523 So.2d 1305, 1310 (La.1988)).
In this case, defendant’s identity as the shooter was established by three witnesses; Ms. Luong who was the manager/bartender of Club Fusion, Ms. Bui who was an employee of the club, and Mr. Smith who was the doorman who worked at the club. However, defendant challenges his identity as the perpetrator of the offense, arguing that the testimony of these witnesses should be discredited based upon their motives to lie and to blame defendant. Defendant contends that Ms. Luong, a convicted felon, encouraged illegal activities in her club including prostitution and illegal gambling. According to defendant, by placing blame on him and declaring no knowledge of the illegal activities, Ms. Luong hoped to divert any scrutiny away from her. Additionally, defendant maintains that Mr. Smith, a sheriffs office employee, did not report the income he made at the club on his taxes and chose to ignore the illegal activities at the club, quitting his job as a doorman one week after the shooting, in hopes of retaining his job with the sheriffs office. Defendant further contends that several defense witnesses testified that he could not have been present at Club Fusion at the time of the shooting because he was at Club Hawaii shortly before the shooting occurred.
In the present case, Ms. Luong testified that she had known defendant for over ten years, and that defendant had been going to her club every weekend. Ms. Luong testified that she was standing inside of the club near the open front door when she saw defendant start shooting at the club. After the first shots were fired, Ms. Luong testified that she ran to a side door inside the bar and observed defendant firing the last shots before he fled to the parking lot. Ms. Luong gave a statement to the police during which she identified defendant from a photographic 112line-up as the person who fired the shots into the club. Ms. Luong’s daughter, Ms. Bui, also testified that she was outside smoking a cigarette when she saw defendant start the shooting. She testified that she was “positive” that defendant was the person who fired the shots into the club.
Mr. Smith also testified that he had known defendant for two years from defendant’s weekly visits to the club. Mr. Smith testified that on the night of the shooting, he prevented defendant from entering the club because he had been previously banned. Mr. Smith was standing by the open front door when he observed defendant start to shoot inside the club. He immediately shut the door and “took cover.” After the shooting, Mr. Smith positively identified defendant as the shooter from a photographic line-up.
The defense called defendant’s friends, Thovan Do and Kim Nguyen, to testify that he was at Club Hawaii at- the time of the shooting, at approximately 3:30 A.M. and thus, could not have committed the crime. Another friend of defendant, Loan Le, testified on defendant’s behalf that she picked him up from Club Hawaii and took him to her house between 4:00 and 4:30 A.M., after the shooting had occurred. The owner of Club Hawaii stated that she was not certain but believed that defendant left Club Hawaii 30-45 minutes before she closed her bar, which was around 4:00-4:30 A.M. on the morning of the shooting. In addition, several of the defense witnesses testified about the alleged illegal activities, such as gambling and prostitution that they believe occur at Club Fusion.
*315 The jury was presented with the evidence regarding the alleged illegal activities at Club Fusion and defendant’s contentions regarding the motivations for the State’s witnesses to lie. Having considered and weighed the evidence, the jury obviously believed Ms. Luong, Ms. Bui and Mr. Smith’s testimonies over the defense witnesses. The jury’s conclusions regarding the credibility of the [^witnesses is dependent upon its in-court observation, and when faced with a conflict in testimony, the jury is free to accept or reject, in whole or in part, the testimony of any witness. See State v. Alexander, 12-836 (La.App. 5 Cir. 5/23/13), 119 So.3d 698; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. It is the trier of fact who weighs the respective credibility of the witnesses, and this Court will generally not second-guess those determinations. See State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, 1051. A positive identification by one witness is sufficient to support a conviction. State v. Cowart, 01-1178 (La.App. 5 Cir. 3/26/02), 815 So.2d 275, writ denied, 02-1457 (La.5/9/03), 843 So.2d 387. Despite the testimony regarding the alleged motives of the State’s witnesses to lie, and the fact that some defense witnesses provided an alibi defense for defendant, the jury was within its discretion to believe Ms. Luong, Ms. Bui, and Mr. Smith regarding the identification of defendant as the shooter.
Accordingly, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found defendant guilty of illegal use of a firearm during the commission of a crime of violence beyond a reasonable doubt. We find that this assignment of error lacks merit.
OTHER CRIMES EVIDENCE
In his first assignment of error, defendant argues that the trial court erred in allowing the admission of other crimes evidence, charging that the trial court did not weigh its prejudicial effect and did not apply the proper standard of proof necessary for admittance. Defendant argues that the trial court erred in granting the State’s La. C.E. art. 404B[6] motion and allowing testimony that Mr. Smith has had problems with defendant in the past, and of an altercation that occurred at the Fusion Club in September 2009, about a month prior to the instant crime.
|14On May 13, 2010, the State filed a Notice of Intent to Use Evidence of Other Crimes. In the notice, the State asserted that it intended to introduce at trial an altercation that occurred outside of the Fusion Club on September 9, 2009, involving defendant and his wife, Ms. Le. It was noticed that as a result of the altercation, Ms. Le pled guilty to violating La. R.S. 14:103 and that the charges against defendant were dismissed. The State further advised that it intended to call Mr. Smith, the doorman at the Fusion Club, to testify that he has “had many problems with the defendants and that he has had to put [defendant] out on multiple occasions.” The State maintained that the instant offense was precipitated by these previous incidents, thus, the State intended to use them for the purpose of showing intent, motive, and identity.
On May 19, 2010, the 404B hearing was held. At the conclusion of the testimony, the State argued that it intended to use Mr. Smith’s testimony to establish that he has had many problems with defendant and Ms. Le in the past. The State submitted that the evidence was important to prove identity since defendant was claiming an alibi defense, and Mr. Smith would testify that he knows the person who fired the shots into the club based on these *316 previous dealings with defendant. It further argued that the evidence would be necessary to show motive and intent, establishing why defendant may have fired into the club.
In response, defendant argued that to allow these alleged incidents into evidence would “simply smear his character.” Defendant further argued that not one of the instances cited by Mr. Smith involved a firearm. Defendant noted that he could not defend against these alleged incidents because there had been no dates provided to prepare a proper alibi.
After listening to the arguments of counsel, the trial court granted the State’s motion to introduce evidence of other crimes, finding the evidence showed motive, |1finoting that defendant may have been “mad at the doorman, mad at the club, often got into fight and needed protection....”
Defendant then asked the trial court to clarify the scope of his ruling, questioning whether Mr. Smith would be allowed to testify about “fifteen things, or is he limited to [the] September 8th [incident]?” The State responded that it intended to do a “broad brush” approach and would not go into “every single punch ever thrown in the bar.” In response, the trial court ruled:
Alright, here’s what I’m going to do. Cuz [sic], you know, Mr. Regan brings up a good point. And I think we’re kind of bordering on character evidence versus Prieur. And so what I think what I’m going to do to satisfy that is I’m not going to allow the deputy to give a number. Can’t say fifteen times. You can say that he, you know, they were patrons, he know [sic] them — He’s had problems with them in the past or something to that effect.
As a result of the trial court’s ruling, the State introduced the September 8, 2009[7] altercation at the club into evidence at trial. Mr. Smith also testified at trial that he had known defendant for two years and was familiar with defendant from his weekly visits to the club, stating that “every time he comes to the club, he always cause [sic] problems.” Mr. Smith also testified in rebuttal that at one time, he and defendant got into a verbal altercation and that they had to be separated from each other.
Evidence pertaining to a defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible when the only purpose of such evidence is to prove the defendant’s character and, thus, his subsequent disposition to break the law. La. C.E. art. 404; State v. Harrison, 604 So.2d 583 (La.1992); State v. Humphrey, 412 So.2d 507 (La.1981); State v. Wright, 94-682 (La.App. 5 Cir. 1/18/95), 650 So.2d 291, writ denied, 96-0855 (La.9/20/96), 679 So.2d 430. The underlying rationale behind this rule is that the prejudicial tendency of such evidence outweighs its probative value, since the finder of fact is likely to convict because the defendant is a “bad person” regardless of the strength of evidence against him in the case being tried. State v. Brown, 318 So.2d 24 (La.1975); State v. Gay, 616 So.2d 1290 (La.App. 2 Cir.1993), writ denied, 624 So.2d 1223 (La.1993).
However, such evidence may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule when it tends to prove a material issue and has independent relevance other than *317 showing that the defendant is of bad character. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. La. C.E. art. 404B(1) provides that:
[e]xcept as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In order for other crimes evidence to be admitted under La. C.E. art. 404B(1), certain requirements must be met. State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 451, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299; State v. Jackson, 05-923 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 78, writ denied, 06-1589 (La.1/8/07), 948 So.2d 121. First, pursuant to Priewr, the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. Page, 28 So.3d at 451 (citing Jackson, 926 So.2d at 78). Additionally, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of|17the crime charged. Id.; See also State v. Schaller, 08-522 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046, 1060, writ denied, 09-1406 (La.2/26/10), 28 So.3d 268. Finally, Prieur requires that the State show that the defendant committed the other crimes. Jackson, 926 So.2d at 78. This Court has recognized that not every violation of Priewr notice requires reversal, and a defendant must show prejudice before he can complain of such a violation. State v. Ridgley, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 698, writ denied, 09-0374 (La.11/6/09), 21 So.3d 301.
Finally, the probative value of the extraneous evidence must outweigh its prejudicial effect. Page, 28 So.3d at 451 (citing La. C.E. art. 403; Jackson, 926 So.2d at 78). The purpose behind Article 404(B) is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. Schaller, 15 So.3d at 1060-61. The burden is on the defendant to show that he was prejudiced by the admission of the other crimes evidence. Schaller, 15 So.3d at 1060; Jackson, 926 So.2d at 78. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art 404B(1) will not be disturbed. Schaller, 15 So.3d at 1061.
Here, the testimony at trial revealed that defendant frequently “caused problems” at the Fusion Club. Specifically, in September 2009, less than a month before the instant offense was committed, defendant and Ms. Le were involved in a bar fight with one of the waitresses, which escalated out into the parking lot. Defendant and Ms. Le were injured as a result of the altercation. Defendant declined medical treatment, but Ms. Le was treated for her injuries at the hospital. Both defendant and his wife were issued misdemeanor summons. Although the charges against defendant were dismissed in connection with this incident, Ms. Le pled guilty to disturbing the peace. At trial, defendant testified that he was angry 118with the owner of the club as a result of *318 the fight because she defended the waitress who allegedly caused the fight instead of his wife nor did she come to his wife’s aid. He also testified that it was not fair that he received a summons as a result of the altercation, and the waitress did not because he did nothing wrong. Defendant’s wife testified that just prior to the shooting, she was being removed from the club by the owner, Ms. Luong, and the doorman, Mr. Smith, for engaging in a verbal altercation with the same waitress who injured her in the September 2009 fight.
The Louisiana Supreme Court has found that “[f]or evidence of motive to be independently relevant, it must be factually pai'ticular to the victim and the charged crime.” State v. Rose, 06-0402 (La.2/22/07), 949 So.2d 1236, 1244. Considering that the record demonstrates that these “other crimes” are highly relevant to establish defendant’s motive for shooting into the club, we find that the probative value of the “other crimes” evidence outweighed its prejudicial effect.
Nevertheless, even if the other crimes evidence was erroneously admitted at trial, the admission was harmless. The erroneous admission of other crimes evidence is subject to harmless error analysis. State v. Williams, 05-318 (La.1/17/06), 921 So.2d 1033, 1036, writ denied, 06-0973 (La.11/3/06), 940 So.2d 654. An error is harmless when the verdict is “surely unattributable to the error.” Id. Here, as previously discussed in detail in assignment of error number two, there appears to have been sufficient evidence presented to prove defendant’s guilt as to the charged offense without the admission of these “other crimes.” Three eyewitnesses, Ms. Luong, Ms. Bui, and Mr. Smith, testified that they observed defendant fire his gun into the Fusion Club, and identified defendant in open court as the shooter. Ms. Luong and Mr. Smith also identified defendant from a photographic lineup during interviews conducted after the incident. Given the | ^positive identification by these witnesses, the jury’s verdict was unattributable to any alleged error in permitting the “other crimes” into evidence.
ERROR PATENT REVIEW
We have reviewed the record for errors patent according to the mandates of La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following.
The commitment is inconsistent with the transcript in that the commitment reflects that defendant was found guilty by a jury of the charged offense, however, it then goes on to state that the “plea was acceptable to the State,” and that the court advised defendant of his rights, which defendant waived, and that a waiver of rights form was executed and filed into the record. The error in the commitment appears to be a clerical one. Since a clerical error does not cause prejudice to a defendant’s rights, such error does not merit reversal. See State v. Gilmore, 522 So.2d 658, 661 (La.App. 5 Cir. 1988). However, we order the trial court to correct the clerical error in the original commitment to insure an accurate record.
For the above discussed reasons, the defendant’s conviction and sentence is affirmed. The case is remanded to allow the trial court to correct the commitment consistent with this opinion.
AFFIRMED AND REMANDED.

. Kevin Smith worked full-time as a correctional officer for the Jefferson Parish Sheriff’s Office.

. Tammy Howard of the Jefferson Parish Sheriff’s Office testified that at 1:50 a.m. on September 8, 2009, she responded to a call regarding a disturbance at Club Fusion. When she arrived she observed five people fighting in the parking lot. Deputy Howard issued several misdemeanor summons, including one to defendant and co-defendant. Both defendant and co-defendant were injured in the altercation.

. On cross-examination, Ms. Bui testified that Ms. Le was yelling in Vietnamese, however, when asked to repeat what was said in Vietnamese, Ms. Bui stated that she does not speak the language well but does understand it.

. At trial, it was established that "Kenny” is defendant’s nickname.

. La. R.S. 14:94 provides, in pertinent part:
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence ... shall be imprisoned at hard labor for not less than ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence.

. See also State v. Prieur, 277 So.2d 126, 128 (La.1973).

. The altercation occurred in the late hours of September 8, 2009, and the police arrived in the early hours of September 9, 2009.