■ ROBERT A. CHAISSON, Judge.
12Pefendant, Peter Simmons, appeals his conviction and sentence for unauthorized use of a motor vehicle. In his sole- assignment of error, defendant contends that the trial court improperly allowed the admission of other crimes or bad acts evidence pursuant to La. C.E. art. 404(B). For the reasons that follow, we find no merit to defendant’s argument and accordingly affirm his conviction and sentence.

PROCEDURAL HISTORY

On January 21, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with -unauthorized use of a motor vehicle, in violation of La. R.S. 14:68.4. Defendant pled not guilty and thereafter proceeded to trial before a six-person jury. After considering the evidence . presented, the jury, on July 30, 2015, found defendant guilty as charged.
On August 10, 2015, the trial court sentenced defendant to imprisonment for eighty months. The State thereafter filed a bill of information pursuant to La. R.S. |s15:529.1, alleging defendant to be a third felony offender. After being advised of his rights, defendant" admitted to the allegations in the multiple offender bill. The trial court then vacated defendant’s original sentence and resentenced him under the'multiple bill statute to imprisonment at hard labor for eighty months without benefit of probation or suspension of sentence. Defendant now appeals.

FACTS

On July 1, 2011, Steven Mang parked his older model gold GMC truck on Heebe Street next to the side of the building where he worked. He locked the truck and -put the only set of keys to the vehicle in his pocket. Mr. Mang left his truck parked there over the holiday weekend, and when he returned to work on July 5, 2011, his vehicle was gone. After verifying that his truck was not at his house, Mr. Mang called the Jefferson Parish Sheriffs Office to report that his vehicle had been stolen.
Thereafter, on July 15, 2011, Detective Judd Harris of the Jefferson Parish Sheriffs Office was on patrol, and at approximately 2:50 a.m., he was notified that a stolen vehicle was in the area of the West-bank Expressway and Estalote Avenue. Detective Harris immediately proceeded to that area, and within five minutes, he located the vehicle' at 1800 Brown Avenue.[1] *1277 As Detective Harris drove by the truck to verify the license plate number, he observed a passenger, later identified as Van Hughes, exit.the truck and walk towards the front of it. Detective Harris then pulled up, saw another black male sitting in the driver’s seat of the truck, and ordered both subjects to approach his police unit and place their hands on it for officer safety. Both subjects complied and put their hands on the hood of the police unit. As Detective Harris was placing Mr. Hughes in handcuffs, the ^individual who had been sitting in the driver’s seat and who was subsequently identified as defendant, fled. Detective Harris then notified headquarters about the fleeing suspect/at which point the passenger hit Detective Harris and attempted to run away. However, Detective Harris was able to stop and detain Mr. Hughes by deploying his taser.
Deputy Ryan Singleton of the Jefferson Parish Sheriffs Office Crime Scene Division arrived on the scene and dusted both the police unit and the stolen vehicle for fingerprints. According to Deputy Singleton, he was able to obtain four slides-one from the hood of the police unit, two from the exterior front driver’s door of the stolen vehicle, and one from the packaging of a halogen light bulb on the front seat of the stolen vehicle. Nikki Passalaqua, án expert in latent print examination, compared the fingerprints obtained from the crime scene' to defendant’s fingerprints. The latent print taken from the hood of the police vehicle was identified to defendant’s left ring finger, and the print from the exterior of the halogen light bulb package was identified to defendant’s left middle finger.
Approximately two years later, in August of 2013, Detective Chad Dear of the Jefferson Parish Sheriffs Office called Detective - Harris and told him he had received information about a fingerprint in connection with the instant case and asked him to look at a- photograph. Detective Harris subsequently viewed the photograph and immediately recognized defendant as the driver who fled the scene in the instant case on July 15, 2011.. Defendant was subsequently arrested pursuant to a warrant and brought- to the detective bureau for an interview.
After being advised of his rights and waiving them, defendant gave a recorded statement, in which he initially claimed to have no specific recollection of the incident with the gold GMC‘ truck. He maintained that his fingerprints could have been found-on the truck because he was a mechanic who worked on many | Scars and could have also been found on the patrol unit because he - had been on police cars numerous times. Later in the interview, defendant recalled the incident and admitted to being in the truck. However, he claimed that he was just checking out the transmission for Van Hughes,[2] who had told-defendant earlier that the truck “slipped.” As defendant was sitting in the truck by himself, the police arrived. Defendant explained that he initially put his hands on the police car but then left the scene when he saw the police officer'deploy his taser on Mr. Hughes.
In addition to giving a statement, defendant testified at trial. According to defendant, on the night in question, he, Mr. Skinner, and Mr. Hughes were shooting pool at a pool hall on Barataría Boulevard. They left the ■ pool hall and went to Mr. Hughes’ house where defendant first saw the 1989 GMC truck. At that point, it was approximately 2:00 a.m. They engaged in a conversation about transmissions, after which defendant walked over to the truck, *1278 got inside, noticed the steering- column was broken,.and started it up. ■■Defendant explained that he then exited the -vehicle, and as he did so, the police arrived. He further -claimed that the police officer pulled out his taser and told him and Mr, Hughes to come put their hands on the police car, Mr. Hughes asked the officer why he was there, and the officer replied that he was there .because of a disturbance.
Defendant testified that the officer and Mr. Hughes got into a, tussle. He explained that -since. the disturbance had nothing to do with him, and he did not want to be “tased,” he walked away, got into Mr. Skinner’s truck, and left. Defendant testified that he did not steal. Mr., Mang’s.. truck, nor did he -know that the truck was stolen. He explained that defeated steering columns,.were “common,” and the fact that this truck had a defeated steering column did not alert him to the fact that it might be stolen.

J¡¡OTHER CRIMES EVIDENCE

In his sole assignment of error, defendant challenges the admission of other crimes evidence under La. C.E. art. 404(B). Defendant maintains that the other crimes evidence,- which reflected his involvement with stolen.or unlawfully possessed vehicles or vehicle parts, was overwhelmingly prejudicial and had no probative value to the charged offense.
On April'29, 2015, the State filed a “Motion to Admit Prior Bad Acts Pursuant to Article, 404(B) of the Code of Evidence.” In that motion, the State noticed its intent to introduce at trial twelve prior bad acts similar to the instant case, wherein defendant was involved with stolen vehicles or unlawful, possession of vehicles or vehicle parts. The State asserted that these acts were admissible in. order to show defendant’s intent, as well as preparation, plan, knowledge, motive, opportunity, and absence of mistake or accident. The State attached to its motion ,a police report or reports in connection with each incident. After-a hearing on May 14, 2015, the trial court granted the State’s motion to introduce these prior bad acts.
Pursuant to this ruling, the State, at trial, presented evidence of some of the other crimes or bad acts listed in its motion through the testimony of five witnesses. First, Detective Michael Miles of the Jefferson Parish Sheriffs Office testified that in April of 1993, he observed defendant sitting in a white Buick Regal tampering, with something near the dashboard area. His attention was drawn to defendant because he saw defendant and another, person sitting- in the vehicle acting suspiciously, looking back at Detective Miles like they were “up to something.” Detective Miles approached the vehicle and questioned defendant about ownership of it. He also ran the license plate and discovered that the vehicle |7was stolen. Further, Detective Miles-noticed that the steering column was damaged, and he subsequently arrested defendant.
Next, Keith Lataxes, a retired employee of the Jefferson Parish Sheriffs Office, testified that in the early 1990’s, he investigated and arrested defendant for possession of stolen'vehicles located at defendant's residence. He went to the scene and identified two vehicles that had defeated steering columns and vehicle identification numbers that had been switched. Mr. Lataxes -stated that he asked defendant about a white Buick Regal, after which defendant explained that his cousin arrived with that vehicle and. asked for. his assistance in installing a radio. Although defendant noticed the defeated steering column, he told the officer he did not think much about it.- Retired Officer Lataxes also questioned defendant about a stolen gray- Buick. According to Mr. Lataxes, defendant asserted that he had purchased *1279 that vehicle from his next door neighbor at least a month earlier and did not pay-attention to the defeated steering column.
The State then called Dave Jackson, Jr., a retired deputy with the Jefferson Parish Sheriffs Office, who testified that he arrested defendant on January 24, 2008, at a Winn-Dixie on Belle Chasse Highway. Mr. Jackson explained that he was in the process of writing a parking citation for a vehicle that was illegally , parked. When Mr. Jackson ran the license plate, he learned that the license plate was stolen from Plaquemines Parish. According to Mr. Jackson, defendant subsequently came out of the store and identified his vehicle. Mr. Jackson then arrested defendant for being in possession of stolen property and for outstanding attachments from Jefferson Parish.
Deputy Myron Gaudet of the Jefferson Parish Sheriffs Office testified that in November of 2008, he investigated defendant for possession of a stolen vehicle. He explained that latent prints had been recovered from a stolen vehicle. After Isbeing processed, it was determined that those prints belonged to defendant. Deputy Gaudet expláined that the criminal database showed that defendant had an extensive record involving automobile theft, so they arrested defendant.' Deputy Gau-det contacted the victim, but she had no idea who defendant was. Further, she had not taken her car in-for repairs, and no one else had possession of her car. Deputy Gaudet testified that the police report indicated that on November 16, 2008, the victim noticed her vehicle missing from where it. was parked, and a short time later it was discovered around the corner with a broken steering column and the ignition defeated.
Lastly, the State called Trooper John Neal of the Louisiana 'State Police, who testified that in September of 2012, he participated in an investigation of defendant and a stolen vehicle. He explained that as he was patrolling the area of the Westbank Expressway and Ames- Boulevard in Marrero, the “LoJack” stolen car tracking device activated and pointed him in the direction of a stolen vehicle. ■ Trooper Neal tracked'that vehicle to a storage shop and verified it to be stolen. He waited there and called for backup. Before backup arrived, two' people, one of whom was defendant, ,came out of the shop. Trooper Neal stated that he advised them of their rights, that defendant was arrested, and that detectives took over the investigation. Trooper Neal testified that defendant and another - individual were there with the stolen vehicle, which was being dismantled.
On appeal, defendant contends that the trial court erred in allowing the admission of this other crimes evidence. In particular, he maintains that the" other crimes evidence did not address a contested element at trial, that the State failed to carry its burden of proving that defendant committed the other crimes, that the other crimes evidence was unduly prejudicial, and that the trial court’s error in |fladmitting this evidence'was not harmless. For the- reasons that follow, we find no merit to these arguments.
La. C.E. art. 404(B)(1) provides for the admission of other crimes evidence as follows: ’ ■
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other -purposes, such as proof of motive,- • opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request 4by the accused, the prosecution in a criminal case shall provide reasonable notice in ad- *1280 vanee.of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In order for evidence of other crimes; wrongs, or acts to be admitted, certain requirements must be met. First, pursuant to State v. Prieur, 277 So.2d 126 (La.1973), the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. State v. Le, 13-314 (La.App. 5 Cir. 12/12/13), 131 So.3d 306, 317. Additionally, one of the factors listed in Article 404(B) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146, 149 (La.1993); State v. Marshall, 13-233 (La.App. 5 Cir. 10/30/13), 128 So.3d 1156, 1160.- Further, the State must prove that the. defendant committed the other acts by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); State v. Hernandez, 98-448 (La. App. 5 Cir. 5/19/99), 735. So.2d 888, 898-99, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194. Finally, the probative value of the extraneous evidence must outweigh its prejudicial effect. State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 451, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299.
The burden is on the defendant to show that he was prejudiced by the trial court’s admission of evidence of other crimes, wrongs, or acts. State v. Marshall, 128 So.3d at 1160. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E, art. 404(B)(1) will not be disturbed. State v. Le, 131 So.3d at 317.
We will now consider each of the challenges raised by defendant to the admission of the other crimes or bad acts evidence.

The other crimes evidence did not address a contested element.

Defendant argues on appeal that the other crimes or bad acts evidence should not have been admitted because intent was not an issue at trial. To support this argument, defendant points out that he freely admitted in his statement and at trial that he entered the'vehicle and attempted to start it to evaluate the transmission. He further points out that at no time did he contend that his entry of the truck was by mistake or accident.
In the present case, defendant was convicted of unauthorized use of a motor vehicle. That offense is defined in La. R.S. 14:68.4 as the “intentional taking or' use of a motor vehicle which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.” With respect to the offense of unauthorized use of a motor vehicle, this Court, in State v. White, 07-831 (La.App. 5 Cir. 3/11/08), 982 So.2d 843, 846, unit denied, 08-846 (La.10/31/08), 994 So.2d 534, stated:
This court has recognized a mens rea requirement or criminal intent based on State v. Bias, 400 So.2d 650, 652 (La.1981), a case involving a virtually identical statute—unauthorized use of a movable, |nR.S. 14:68. State v. Joseph, 05-368 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, 1063. “[T]he ‘evil’ state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381.” State v. Bias, 400 So.2d at 652-53. [footnote omitted]
*1281 In a case similar to the instant one, State v. Howard, 37,603 (La.App. 2 Cir. 10/31/03), 859 So.2d 936, the defendant was convicted of unauthorized use of a motor vehicle. On appeal, the defendant argued that the trial court erred in allowing other crimes evidence of other incidents involving the defendant not returning automo.-biles taken for cleaning. In Howard, the record showed that before trial, a Prieur hearing was held, wherein the present victim and six other witnesses testified about the defendant taking, a vehicle for cleaning and then not returning it. After the hearing, the trial court ruled that this evidence was admissible as other crimes evidence pursuant to La. C.E. art. 404(B). Subsequently, at trial, five of the other victims testified about the defendant taking their automobiles. On appeal, the appellate court found that the trial court did not abuse its discretion in allowing the admission of the other crimes evidence. In so ruling, the appellate court reasoned that the other crimes evidence “allowed the state to show -that the defendant had a pattern of taking and not returning vehicles entrusted into his care, showing his intent 'in the present case, his knowledge that his actions were unauthorized, and the lack of any mistake or accident.” .
In the present case, despite defendant’s assertion to the contrary, intent was at issue. At trial, defendant testified that he did not steal Mr. Mang’s truck, and he did not know that the truck was stolen even though he ■ noticed the defeated steering column; rather, 'he attempted to provide an innocent explanation, namely, that he simply got into the truck and started it to test the transmission. In light of defendant’s testimony, and since the State was required to prove that defendant [ ¶ ¿intentionally took or used Mr. Mang’s truck without his consent or by fraudulent practices, intent was genuinely an issue at trial.[3].
As in State v. Howard, supra, the other crimes or bad acts, which were similar to the charged offense, allowed the State to show that defendant had a pattern of being found in possession of stolen vehicles or vehicle parts, which showed intent in the present case, defendant’s knowledge that his actions were unauthorized, and the lack of any mistake or accident. Accordingly, the other crimes or bad acts evidence had independent relevance to show intent, knowledge, and absence of mistake or accident, and thus, this evidence was properly admitted pursuant ' to La. C.E. art. 404(B)(1),

The State failed to carry its burden at trial.

On appeal, defendant also contends that the State failed to carry its burden of proving that he committed the other crimes or bad acts, as is required for the admission of such 'evidence. In its appellate brief, the State notes that defendant did not object to the admission of the other crimes evidence on this basis in the trial court and therefore is precluded from raising this particular issue on appeal. See State v. Butler, 15-89 (La.App. 5 Cir. 7/29/15), 171 So.3d 1283, 1289.
Nonetheless, this issue has no merit. At the pre-trial hearing, the State introduced into evidence numerous police reports regarding those acts, and at trial, the State called five law enforcement officers to testify as to their personal knowledge of those acts. Moreover, at trial, defendant *1282 testified as to his criminal history and admitted his involvement with stolen cars. Based on the- evidence presented, we find that the State met its burden of proving that defendant committed the other crimes or bad acts by a preponderance of the evidence.

11SThe other crimes evidence was unduly prejudicial.

On appeal, defendant additionally argues that the other , crimes or bad acts evidence was unduly, prejudicial because the evidence was so lengthy that, it constituted a “trial within a trial.” He contends that the State’s case consisted of a total of 173 pages of transcript and of that total, 43 pages, or twenty-five percent of.the trial, dealt exclusively with other crimes or bad acts evidence. A review of the record shows that defendant is correct in his calculations; however, the record also shows that there were multiple bench conferences spanning numerous pages. As such, the record reflects that a majority of the trial was spent on the instant ease.
Moreover, the record also shows that the State’s case was presented in a logical and orderly fashion with' the testimony regarding the instant offense presented first, followed by thé presentation of the other crimes or bad acts evidence. Additionally, the testimony regarding the other crimes or bad acts evidence was clear, brief, and concise, and there is no evidence that the other crimes or bad acts evidence confused or misled the jury.. Further, it is noted that the. other crimes'-or bad acts evidence presented at trial involved fewer incidents than the trial judge had ruled admissible at the pre-trial hearing.
In addition, -the trial court gave a limiting instruction to the jury regarding the use of other crimes evidence and specifically reminded them that “the accused is on trial only for the offense(s) charged. You may not find him guilty of the offense merely because he may have committed another offense.” See State v. Lestrick, 13-289 (La.App. 5 Cir. 10/9/13), 128 So.3d 421, 435, writ denied, 13-2643 (La.4/25/14), 138 So.3d 643 (where this Court found that the evidence of the prior offense was more probative than prejudicial, noting that there was no indication that- the -other crimes evidence misled or ’ Confused the jury; the evidence was presented in an orderly manner with the evidence of the defendant’s prior | uoffense being presented at the conclusion of trial; and the trial court gave the jury a limiting instruction). Given these circumstances, wé find that defendant failed to prove that he was prejudiced by the admission of the other crimes or bad acts evidence, especially in light of defendant’s own testimony regarding his criminal background.
The trial court’s, error was not harmless.
As part of this assignment, defendant contends that the erroneous admission of the other crimes or bad acts evidence was not harmless. Based on our review of the record and the applicable law, we have found no error in the admission of the other crimes evidence at defendant’s trial. Therefore, it is unnecessary to conduct a harmless error review; See State v. Gatlin, 14-298 (La.App. 5 Cir. 10/29/14), 164 So.3d 891, 898, writ denied, 14-2518 (La.9/25/15), 178 So.3d 565.
In light of the foregoing, we find that the requirements for the admission of the other crimes or bad acts evidence were met, and thus, the trial judge did'not err by admitting this evidence at trial pursuant to La. C.E. art. 404(B)(1).

ERRORS PATENT REVIEW

We have also reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveauz, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of *1283 the record reveals that the trial court failed to advise defendant of the prescriptive period for post-conviction relief as required by La.C;Cr,P. art. 930.8. While the commitment reflects that the trial court advised defendant of the prescriptive period, the transcript does not so reflect. In accordance with the procedure now routinely employed by this Court, we advise defendant by this opinion, that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence hás h,■¡become final under the provisions of La.C.Cr.P. arts. 914 or 922. State v. Brooks, 12-226 (La. App. 5 Or. 10/30/12), 103 So.3d 608, 615, writ denied, 12-2478- (La.4/19/13), 111 So.3d 1030.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.

AFFIRMED

. .When the vehicle was recovered, the steering column was damaged and wires were exposed. At trial, Mr. Mang testified that his truck was not in that condition when he parked it at work on July 1, 2011. .Mr. Mang also testified that he did not know defendant *1277 and that defendant did not have permission to be in or to take his truck.

. Defendant referred to Van Hughes as • "Mike.”

. The Louisiana Supreme Court has found that before evidence of other crimes is admitted as proof of intent, three prerequisites must be satisfied: 1) the prior acts must be similar; 2) there must be a real and genuine contested issue of intent at trial; and 3) the probative value of the evidence must outweigh its prejudicial effect. State v. Kahey, 436 So.2d 475, 488 (La.1983).