SUSAN M. CHEHARDY, Chief Judge.
I aOn appeal, defendant challenges his conviction for second degree murder. For the following reasons, we affirm defendant’s conviction and sentence.

Procedural History

On May 24, 2012, the Jefferson Parish Grand Jury indicted. defendant, Johnny Fair, on one count of second degree murder for the homicide of Tiffany Frey. On April 17, 2013, the State noticed its intent to use evidence of the defendant’s other bad acts as required by La. C.E. art. 404; this motion was granted on September 11, 2014.
*1240 On February 24, 2015, trial before a 12-person jury commenced. After hearing three days of testimony and evidence, the jury found defendant guilty as charged oh February:26, 2015. On March 4, 2015, the trial judge sentenced defendant to the Department of Corrections for life in prison without benefit of | ¡¡parole, probation, or suspension of sentence. ■ Defendant thereafter filed an appeal, which was granted.[1]

Facts

On January 10, 2012, Tiffany Frey was shot and killed in her apartment at 251 Barry 'Avenue in Jefferson, Louisiana. According to' the expert forensic pathologist, Ms. Frey’s death was caused by one gunshot wound to the back of her head from more than two or three feet away.
. Captain' Dennis Thornton, the Commander of the Homicide Division of the Jefferson Parish Sheriffs Office (“JPSO”), was in the area to investigate an-unrelated incident and reported to investigate this homicide. Captain Thornton observed the victim lying on the floor of her apartment. Near the victim’s body, the officers recovered two Winchester .40-caliber Smith & Wesson cartridge casings and one spent projectile. Ballistics showed that the .40-caliber casings were fired from the same .40-caliber semi-automatic weapon, which is consistent with ■ only one weapon being fired during the incident.
Sergeant David Spera of the JPSO Violent Crimes Unit was assigned by Captain Thornton as the lead investigator of this homicide. Sergeant Spera interviewed, among other witnesses, Sean Brooks, who admitted that he was present during the homicide and reported the homicide immediately after it happened. Sergeant Spera also interviewed Sean’s brother, Jeffrey Brooks, who was detained across the street from the crime scene and admitted that he was present when the victim was killed. The brothers separately identified Johnny Fair, defendant herein, as the person who shot Tiffany Frey.
[¿The Brooks brothers knew defendant from- growing up in “Pigeon Town.”[2] As recently as December of 2011, Sean had lived with defendant for several weeks. Jeffrey had also stayed at defendant’s apartment, for a short period of time in December of 2011 and acted as a lookout for defendant to alert him if any of his enemies from Pigeon-Town came-to their street.’ : Both brothers also purchased crack cocaine from defendant' directly or through the victim, Tiffany Frey, who sold crack for defendant, too. Both men also stayed with the victim, Tiffany Frey, from time to time. Sean Brooks lived with Tiffany to use drugs with her. Jeffrey Brooks had an intimate relationship and used drugs with Tiffany Frey.
On the night of January 10, 2012, Sean tried to get Tiffany to leave the area because he heard defendant threaten to kill Tiffany for telling his enemies from Pigeon Town where he was living. That night, *1241 Sean and Tiffany smoked crack in Tiffany’s apartment and then Tiffany made a telephone call. While she was on the telephone, Jeffrey Brooks and defendant knocked on her door. Tiffany answered the door and allowed defendant into her apartment but kept talking on the phone. According to Sean, when Tiffany turned her back to walk away from defendant, he raised his hand, moved toward her, and fired two shots at her.
Jeffrey, who was standing at the threshold of the apartment, also saw defendant raise his hand and then heard two shots. Jeffrey was positive that defendant shot Tiffany Frey. Jeffrey testified that, when he had lived with defendant in his apartment, defendant carried a .40-caliber handgun on him at all times. Jeffrey admitted that, after the shooting, he immediately ran away and hid in an abandoned apartment across the street since he was on parole.
| ¡¡Pursuant to a search warrant issued for defendant’s apartment, JPSO officers recovered one open, partially empty box of Winchester .40-caliber Smith & Wesson ammunition from defendant’s apartment. Further, the State introduced testimony from several police officers that reflected that, on October 8, 2011, defendant was shot in the hand by an unknown assailant while defendant was standing on the front porch of a residence in Pigeon Town. That day, New Orleans police officers recovered three Winchester .40-caliber Smith & Wesson spent casings on or near the front porch, which were consistent with shots fired by a person standing on the porch. Colonel Tim Scanlan, the Commander of Lab Services for JPSO, testified that the three casings recovered in New Orleans matched the markings of the two casings recovered from the homicide scene in this cas,e, which is consistent with the casings being ejected from the same .40-caliber-semi-automatic weapon.
Defendant testified'on his own behalf. Defendant admitted that, in 2006, he was convicted of negligent homicide in a “drug deal gone bad.” Further, defendant was convicted of possession of a stolen firearm in 2010. • Defendant admitted that he sold drugs to Tiffany Frey, Sean Brooks, and Jeffrey Brooks. He admitted that he gave Tiffany Frey drugs to sell for him at her apartment. Defendant stated that Tiffany Frey called him to make Jeffrey Brooks leave her apartment because Jeffrey was a “crack fiend” that “put his hands on [her] over crack.”
Defendant testified that he had to kick the Brooks brothers out of his apartment because food, water/toilet paper, and a gun “came up missing” during their stay. Further, defendant stated that the .40-caliber handgun that he carried for protection in January of 2012 was given to him by “Mike” from Pigeon Town after October of 2011. Defendant denied any involvement in a shooting in Pigeon Town in October of 2011.
| ^Further, . defendant testified that “Mike’s” .40-caliber gun was stolen from defendant’s-apartment earlier in the day before Tiffany Frey was murdered. Defendant stated that the Brooks brothers killed Tiffany Frey with his gun, which they stole from his apartment earlier that day. ■ .
After hearing all of the testimony and evidence, the 12-person jury .found defendant guilty as charged of second degree murder. Defendant now appeals that verdict.

Law and Argument

On appeal, defendant raises three assignments of error: in .his counseled as *1242 signment of error, defendant argues that the trial court erred in admitting evidence of other crimes because it was unduly prejudicial and lacked probative value; in his first pro se assignment of error, defendant argues that the trial court erred in denying his motion to suppress evidence as Captain Thornton’s testimony was “perjured;” and, finally, in his last pro se assignment of error, defendant argues that his conviction should be reversed because the prosecutor engaged in misconduct by allowing “perjured testimony from Captain Thornton to go uncorrected.”
In his counseled assignment of error, defendant argues that the trial court erred in admitting evidence regarding an unrelated shooting that occurred on October 8, 2011, in which defendant was the victim. Defendant specifically argues that this evidence prejudiced him as he would not have taken the witness stand if he had not had to refute. this evidence. The State responds that the trial court did not abuse its discretion and that the evidence was properly admitted at trial.
La. C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, [7be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) “must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible.” State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the State must prove that the defendant committed the other acts by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); State v. Hernandez, 98-448 (La.App. 5 Cir. 5/19/99), 735 So.2d 888, 898-99, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194.
Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met. Thereunder, the State must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The State must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the |sother crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense *1243 responsive to it. See State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, 962.
In the instant case, defendant asserts that the State failed to prove he committed the bad acts and that the evidence, therefore, had probative value. He further asserts that the trial court erred in finding that the probative value of the evidence outweighed any unfair prejudicial effect of allowing its introduction.
Prior to trial in the present case, the State filed a notice of intent to use evidence of defendant’s other bad acts pursuant to La. G.E. art. 404. The State sought to introduce evidence of a gun incident that occurred in New Orleans on October 8, 2011, in which defendant was injured. After the incident, law enforcement officers collected spent casings from' the scene: three Winchester ,40-caliber Smith & Wesson spent casings and six 9mm spent casings. The State asserted that the three Winchester .40-caliber Smith & Wesson spent casings were admissible under La. C.E. art. 404(B) to show identity, motive, intent, preparation, plan, and absence of mistake or accident.
After a hearing, the trial court ruled that the evidence, which tended to prove defendant’s identification, was more probative than prejudicial and, thus, was admissible under La. C.E.. art. 40.4(B).[3] . The court specifically stated that the casings recovered in- New Orleans, which match the markings of those casings found at the homicide in the present case, were found in an area where defendant had .placed himself, which was 'highly probative of identification and, thus, highly relevant to the ihstant crime.’
13At trial,, the £>tate presented the testimony [4] of New Orleans Police Department officers — Detective Homer, Detective Baldwin,, and Officer Koelling — regarding the. October 8, 2011 shooting in New Orleans. Detective Homer testified that, at the hospital, she interviewed the defendant, who informed her that he was shot at 1828 General Ogden Street. Detective Baldwin testified that defendant provided a statement that he was standing on the porch when the shooting occurred. Detective Baldwin also explained that crime scene technicians recovered both 9mm and ,40-caliber spent casings from the scene of the shooting. ■ Officer Koelling1 testified that three Winchester ,40-caliber Smith & Wesson spent casings were recovered on or near the porch at the scene of the shooting.
The State also presented the expert testimony of Colonel Scanlan that the ..two Winchester .40-caliber Smith & Wesson spent casings found near, the victim’s body in the present case and the three Winchester .40-caliber Smith <& Wesson casings found on the porch after the shooting in New Orleans were fired from the same semi-automatic weapon. He further testified that the location of the casings in the New Orleans case was consistent with a person shooting a gun from- the porch.
Conversely, defendant testified that during the shooting incident his two “pad’nas” *1244 were shooting from the porch. He- explained that one of the people, shooting from the porch was “Mike,” who sold him the gun connected to the murder in the present cáse. Defendant also testified that hé did not carry a ,40-cáliber weapon during the 2011 shooting incident. Further, he did not purchase the .40-ealiber weapon referred to by the Brooks brothers until after the Octobér '2011 incident.
| uiFirst, defendant argues that the State failed, to carry its burden of proving that he committed the other crimes, wrongs, or acts. The. State must prove by a. preponderance of the evidence that the defendant committed the other acts. State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 139, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Dauzart, 02-1187 (La.App.5 Cir. 3/25/03), 844 So.2d 159, 165.
In the present case, the State presented defendant’s statement that, during the October 8, 2011 incident, he was shot while standing on the porch where the .40-caliber casings were recovered. The investigation into that incident revealed two sets of spent casings, which is consistent with two- weapons being fired during the incident. '■•• Therefore, we find that the State proved by a preponderance of the evidence that defendant committed the other act. '
Next, defendant argues that the evidence is more prejudicial than probative. In State v. Davis, 13-237 (La.App. 5 Cir. 10/30/13), 128 So.3d 1162, 1169-1170, writ denied, 13-2751 (La.5/23/14), 140 So.3d 723, which is factually similar to this .case, the defendant argued that the trial court erred in allowing the State to present evidence that the defendant, who was on trial for murder, was involved in a previous unrelated shooting. This Court found that there was no error in the admission of evidence of the previous shooting. Further; this Court stated that evidence that the defendant shot someone with the same gun used to murder the victim was relevant to establish'that the defendant killed the victim by showing identity, opportunity, and plan. Id. at 1171.
In the present case, defendant argues that the trial court erred in allowing the State to present evidence of a previous unrelated shooting in which defendant was the. victim. Like in Davis, supra, we find no , abuse of the trial court’s discretion in admitting evidence that spent casings matching those in this case were found I, ,where defendant was, the victim of a shooting. Specifically, the .casings recovered from the porch, where defendant stated that he was located during the previous shooting, matched the only casings found next to the homicide victim in this case, which is highly probative of identity.
Finally, defendant argues that the introduction of the evidence forced him to take the stand to explain the prior shooting. He further asserts that by being forced to take the stand he had to “open himself up to questions about his prior convictions, one of which included a homicide.” However, there is no evidence that' defendaht would not have testified had'the State not presented "other crimes evidence. Compare State v. LaGarde, 07-288 (La.App. 5 Cir. 10/30/07), 970 So.2d 1111, 1126, writ denied, 07-2412 (La.5/16/08), 980 So.2d 706 (where this Court found that there was no evidence that the defendant would not have testified if a defense witness had testified instead). Considering the foregoing, we find this assignment of error lacks merit.
Turning now to defendant’s pro se assignments of error, we find that the as *1245 signments, which focus on alleged . “perjured” testimony from Captain Thornton, can be addressed together. In, his. first pro se ■ assignment, defendant, argues that Qaptain Thornton perjured himself during trial when he testified that the door to apartment 61. was dead-bolted when he arrived at the scene, having previously testified at the suppression hearing that the door to the victim’s apartment '■ was unlocked when they arrived. Although this appears inconsistent when, taken out of context, the record reveals- that there is no inconsistency. •
First, the record is clear that the victim lived at 251 Barry Avenue while defendant and the Brooks brothers had apartments across the street at 261 Jules Street. In fact, defendant resided in Apartment 61 at 261 Jules Street. When Captain Thorton testified at trial, he used the shorthand of “61” to refer to | ^defendant’s apartment, which was locked when officers first reported to the scene. Further, the record is clear that the door to the victim’s apartment was unlocked when officers reported to 251 Barry, which is also consistent with the Brooks brothers’ testimony that everyone fled , the apartment immediately after the shooting.- Thus, the record reflects that there was no inconsistency and no perjury. As such, there was no need for the prosecutor to avoid this testimony. Accordingly, these assigned errors lack merit. :

Errors patent

Finally, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. We find no errors that require correction. Accordingly, defendant’s conviction and sentence are affirmed.

AFFIRMED

. The record reflects that the Louisiana Appellate Project was assigned to represent defendant on March 23, 2015. Thereafter, on April 24, 2015, defendant’s IDB attorney filed a motion for appeal, which was granted on April 27, 2015. Although the motion for appeal was untimely according to La.C.Cr.P. art. 914, we will address the merits of defendant’s appeal to avoid further useless delay. See State v. Shay, 07-624 (La.10/26/07), 966 So.2d 562; State v. Cortez, 11-1041 (La.App. 5 Cir. 5/22/12), 98 So.3d 382, 386.

. "Pigeon Town,” which is also known as "Pension Town” or "Leonidas” (the official city designation), is the New Orleans neighborhood bounded basically by Claiborne Avenue, Carrollton Avenue, Leake Avenue and the Orleans Parish line.

. The trial court also opined that the evidence of spent casings may not be an "other crime” and found that the evidence wás also admissible under La. C.E. art. 403.

. In this case, defendant requested limiting instructions before trial began, which were given to the' jury immediately before the State’s witnesses testified' about the prior bad acts. Further, the. trial judge gave a general instruction regarding other bad acts evidence during the jury charges.