CHAISSON, J.
Defendant, Corey Flag, appeals eight felony convictions and sentences. On appeal, he contends that the evidence was insufficient to support his convictions as the State failed to negate any reasonable probability of misidentification, and that the trial court abused its discretion in allowing the admission of other crimes evidence pursuant to La. C.E. art. 404(B). For the reasons that follow, we find no merit to defendant's arguments, and accordingly, we affirm his convictions and sentences.
PROCEDURAL HISTORY
On May 5, 2016, the Jefferson Parish Grand Jury returned an indictment charging defendant and his co-defendant, Emmett Garrison, IV, with the second degree murder of Bruce Lutcher, in violation of La. R.S. 14:30.1. Defendant was also charged with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. At his arraignment, defendant pled not guilty.
On September 1, 2016, defendant and co-defendant Garrison were charged in a superseding ten-count indictment. Defendant was charged in eight of the ten counts as follows: count one : second degree murder of Bruce Lutcher on or about November 23, 2015, in violation of La. R.S. 14:30.1 ; count two : conspiracy to commit armed robbery on or between November 23, 2015, and December 11, 2015, in violation of La. R.S. 14:26 and 14:64 ; count three : attempted armed robbery with a firearm of Franklin Diaz on December 11, 2015, in violation of La. R.S. 14:27 and 14:64.3 ; count four : illegal use of a weapon while attempting to commit an armed robbery on December 11, 2015, in violation of La. R.S. 14:94(F) ; count five : attempted armed robbery with a firearm of Fausto Alvarez on December 11, 2015, in violation *1022 of La. R.S. 14:27 and 14:64.3 ; count seven : armed robbery with a firearm of Jose Galeas on December 11, 2015, in violation of La. R.S. 14:64.3 ; count nine : possession of a firearm by a convicted felon on or between November 23, 2015, and December 11, 2015, in violation of La. R.S. 14:95.1 ; and count ten : illegal use of a weapon on December 9, 2015, in violation of La. R.S. 14:94(A)(B).[1] On September 2, 2016, defendant pled not guilty to the superseding indictment.
On September 5, 2017, trial commenced before a twelve-person jury. At the conclusion of the four-day trial on September 8, 2017, the jury returned a verdict of guilty as charged on all eight counts.
On September 14, 2017, the trial court heard and denied defendant's motion for new trial. After defendant waived sentencing delays, the trial court sentenced him to consecutive terms of imprisonment as follows: count one : life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; count two : twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; counts three and five : twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence plus an additional five years at hard labor without benefit of parole, probation, or suspension of sentence to be served consecutively for a total of thirty years imprisonment on each count; count four : ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; count seven : forty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence plus an additional five years at hard labor "without benefits" for a total of fifty years imprisonment; count nine : twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; and count ten : two years imprisonment at hard labor.
Defendant now appeals.
FACTS
Second degree murder of Bruce Lutcher on November 23, 2015 (count one)
On November 23, 2015, Bruce Lutcher was shot and killed outside his apartment on Ute Street in Harvey, Louisiana. At trial, Cassandra Gilds, the victim's girlfriend, testified as to the circumstances surrounding the shooting. According to Ms. Gilds, on November 23, 2015, at about 9:40 p.m., Mr. Lutcher received a phone call and left the apartment they shared. Ms. Gilds was aware that Mr. Lutcher sold drugs and testified that it was not unusual for him to be gone for a few minutes at a time. On that particular night, Ms. Gilds became concerned when Mr. Lutcher did not return after some time had passed. She tried to call his cell phone using a blocked number, but Mr. Lutcher did not answer. Ms. Gilds then asked her friend, Shantrell Johnson, to call his number, and once again, Mr. Lutcher did not answer.[2]
About three minutes later, Ms. Gilds heard the doorbell to her apartment ring twice. Thinking it odd that Mr. Lutcher would ring the doorbell, Ms. Gilds went to *1023 the door and listened. She heard footsteps on the stairs as well as a voice that she did not recognize. Ms. Gilds then heard Mr. Lutcher say, "[n]o, come on, son, no. No, bra." Thereafter, she heard multiple gunshots followed by "scratching noises." Afraid the perpetrators were going to come after her and her children, Ms. Gilds remained inside the apartment and called 9-1-1. While waiting for the police, Ms. Gilds eventually opened the apartment door and saw Mr. Lutcher at the bottom of the stairwell on his knees with his head against the wall. Mr. Lutcher was unresponsive,[3] and his wallet and cell phone were missing.
Detective Rhonda Goff of the Jefferson Parish Sheriff's Office, the lead investigator in the shooting, arrived at the scene and supervised the collection of evidence and the taking of photographs. At trial, Detective Goff indicated that it was common knowledge that Mr. Lutcher sold marijuana and further stated that a large amount of marijuana had been found near the scene. No firearms were ever recovered in connection with the investigation into the homicide of Mr. Lutcher; however, ballistics material including projectiles and casings were recovered on the scene.
Detective Goff observed that Mr. Lutcher's pockets[4] had been turned inside out and that there was a bottle of Visine and the victim's keys on the ground, leading her to believe that Mr. Lutcher had been the victim of a robbery. Mr. Lutcher's wallet and cell phone were never recovered. However, Detective Goff stated that upon listening to Mr. Lutcher's voicemail recording obtained from Ms. Johnson's phone, she concluded that Mr. Lutcher's cell phone was taken during the robbery. Further, Detective Goff testified that she heard running sounds and the voices of three individuals on the voicemail recording, leading her to believe that there was a minimum of two suspects.
About two days after the shooting, Detective Goff spoke with a woman named Ms. Davis[5] who lived nearby and claimed to have witnessed the shooting. According to Detective Goff, Ms. Davis told her that she saw the victim and a man wearing a black hoodie on the night of the murder, which Detective Goff found to be inconsistent with the information gained from the voicemail recording obtained from Ms. Johnson's cell phone. Detective Goff further testified once defendant and co-defendant Garrison were developed as suspects, she did not return to Ms. Davis with a photographic lineup because the woman had mental problems and was not a reliable witness.
Marcques Joseph[6] testified that he knew Mr. Lutcher from the neighborhood, and that on the night Mr. Lutcher was murdered, he observed defendant and co-defendant Garrison walking up the street with guns in their hands towards Mr. Lutcher. Mr. Joseph went inside and a few *1024 minutes later came back outside and saw that the police were at Mr. Lutcher's apartment building. Mr. Joseph positively identified both defendant and co-defendant Garrison in photographic lineups.
Mr. Joseph further testified that sometime after the shooting of Mr. Lutcher, he had a conversation with defendant and co-defendant Garrison during which one of them told him the shooting was "his work." At first, Mr. Joseph stated that co-defendant Garrison was the one who told him about the murder being "his work." However, after he was reminded of his statement to Detective Goff, he insisted it was defendant who said it was "his work."
Drive-by shooting incident on Julie Street on December 9, 2015 (count ten)
On December 9, 2015, a drive-by shooting occurred on Julie Street in Marrero. Deputy Ryan Singleton of the Jefferson Parish Sheriff's Office Crime Scene Division arrived at the scene and collected evidence, which included six casings. According to Deputy Singleton, one of the casings was fired from a Winchester .380 auto-caliber firearm, and the remainder of the casings were fired from a 9 mm firearm. After ballistics testing, it was discovered that the 9 mm shell casings from the drive-by shooting and the murder of Mr. Lutcher were fired from the same gun.
Once Detective Goff became aware of this connection, she spoke to Curvin Nash, one of the individuals present at the scene of the drive-by shooting. According to Detective Goff, Mr. Nash identified defendant and co-defendant Garrison in photographic lineups as the two individuals who shot at him. However, at trial, Mr. Nash recanted his prior statements and maintained that he lied when he told Detective Goff that defendant and co-defendant Garrison were the shooters. Mr. Nash asserted that Detective Goff picked out the men for him and bribed him, informing him that he would get out of jail if he selected their photographs.[7] At trial, Mr. Nash testified that he could not identify the individuals who shot at him because he was unable to see inside their vehicle. He further stated that he was "working off his charges" at the time he made the identifications.
Attempted armed robbery of Franklin Diaz and illegal discharge of a firearm on December 11, 2015 (counts three and four)
On December 11, 2015, at approximately 5:30 p.m., Franklin Diaz was in the parking lot outside of his apartment talking on his cell phone and smoking a cigarette when two black men approached him. According to Mr. Diaz, who testified at trial through a Spanish-speaking interpreter, the taller of the two men pulled out a gun and demanded his money while the shorter one stood behind the other acting as a "lookout." Mr. Diaz refused to comply with their demand and ran away, at which point the tall man with the gun shot at him.
Mr. Diaz was subsequently shown photographic lineups and identified defendant as the tall assailant with the gun and co-defendant Garrison as the lookout. Mr. Diaz also identified both defendant and co-defendant as the perpetrators in open court.
Attempted armed robbery of Fausto Alvarez on December 11, 2015 (count five)
On December 11, 2015, Fausto Alvarez went to pick up a friend at an apartment complex in Terrytown. According to Mr. Alvarez, who also testified at trial through *1025 a Spanish-speaking interpreter, he got out of his car and went to his brother's car, which was parked in the same parking lot, to retrieve his toolbox. While at his brother's car, he was approached by two black men who told him it was a "hold-up." The shorter of the two men pointed a gun at Mr. Alvarez while the taller man reached into his pockets. After finding nothing of value, the taller man hit Mr. Alvarez in the neck and the shorter man with the gun shot Mr. Alvarez in the stomach. The two men then fled.
Mr. Alvarez testified that he was taken to the hospital where he remained for nineteen days, and that as a result of being shot, he is confined to a wheelchair and will never walk again. Mr. Alvarez was unable to identify his assailants from the photographs presented to him by the police. However, Mr. Alvarez made an in-court identification of defendant as the man who searched and hit him based on seeing him in person in the courtroom. Mr. Alvarez further noted that defendant looked different than he did at the time of the attempted armed robbery because his hair at the time of the trial was short.
Armed robbery of Jose Galeas on December 11, 2015 (count seven)
On the evening of December 11, 2015, Jose Galeas was robbed at gunpoint by two black men as he returned home from work to his apartment on Abbey Road. At trial, Mr. Galeas, who also had the assistance of a Spanish-speaking interpreter, testified that he first observed the men as they drove into the parking lot of his apartment complex. As Mr. Galeas was opening his apartment door, the two men, one short and one tall, told him not to move. The shorter man pointed a gun at Mr. Galeas' head while the taller man, who had "braids" and wore a black jacket, searched him and took his wallet containing $430.00. After his assailants left, Mr. Galeas attempted to write down their license plate number, but the men, who were still in the apartment complex, observed him. Mr. Galeas explained that the shorter of the two told him not to look at them and then fired four shots at him.
A few weeks after the armed robbery, Mr. Galeas was shown photographic lineups from which he was able to identify defendant as the taller of the assailants.
December 22, 2015 shooting incident (admitted at trial pursuant to La. C.E. art. 404(B) )
On December 22, 2015, fifteen-year-old Sharamie Joseph was shot and killed as she was sitting on a sofa in her cousin's apartment. According to the testimony at trial, Romalis Levier, who was present on the scene of the December 9, 2015 drive-by shooting, went to Walter Wilson's apartment, which defendant and co-defendant frequented, and shot co-defendant Garrison in the stomach. During the course of the shoot-out, Ms. Joseph, who was visiting her family in the next-door apartment, was killed by a stray bullet. During his trial testimony, Marcques Joseph explained that after his cousin was shot, he went outside and saw co-defendant Garrison running through the parking lot holding his stomach and observed Mr. Levier's car speeding away from the scene.
According to Detective Goff, after co-defendant Garrison was shot, he went back to his home where an ambulance was called.[8] His home was searched, and no guns were found. Detective Goff testified that co-defendant Garrison would have had sufficient opportunity to dispose of a weapon *1026 between the time he was shot and his arrival home.
Investigation of the December 11, 2015 armed robbery and attempted armed robberies
At trial, Sergeant Wayne Rumore and Sergeant Joseph Waguespack of the Jefferson Parish Sheriff's Office testified regarding their investigation of the December 11, 2015 incidents. According to Sergeant Rumore, the first incident, the attempted armed robbery of Mr. Diaz, occurred on East Monterey Court in Gretna at approximately 5:30-5:40 p.m. Upon his arrival, Sergeant Rumore met with Mr. Diaz who described the first assailant as a black male, 5'10? to 6'0? tall, thin build, dreadlock hair style, wearing a white shirt and black pants, and in possession of a black semi-automatic pistol. Mr. Diaz described the second assailant as a younger, shorter black male, thin build, with short hair. Sergeant Rumore testified that there were two 9 mm casings found at the scene.
While at the Monterey Court scene, Sergeant Rumore received a phone call around 6:00 p.m. regarding a second attempted armed robbery and shooting at Faith Place, and he sent Sergeant Waguespack to that scene. Upon his arrival, Sergeant Waguespack assisted Detective Daniel Lincoln in the recovery of evidence from the scene, which included six 9 mm casings. Sergeant Waguespack was unable to speak to Mr. Alvarez that evening because he was in surgery.
Sergeant Rumore then received another phone call a short time later, around 6:20-6:30 p.m., about a third armed robbery incident on Abbey Road, approximately three or four miles away. Sergeant Rumore left the Monterey Court scene and proceeded to the scene at Abbey Road where four 9 mm casings had been recovered. He stated that the victim, Mr. Galeas, informed him that the perpetrators were black males, one short and one tall, and that the shorter black male was in possession of a semi-automatic handgun. Mr. Galeas further advised Sergeant Rumore that the taller male was wearing a black shirt and had a "twist" hairstyle.
Sergeant Rumore testified that he believed the three incidents were related because they each involved two black perpetrators, one short and one tall, and Hispanic victims. Additionally, Sergeant Waguespack identified a map containing the locations of the three crime scenes and noted the three locations were only two or three miles apart and could be reached rather quickly from the main roads.
Sergeant Waguespack testified that co-defendant Garrison was eventually developed as a suspect in the armed robbery and attempted armed robberies after he was advised by a homicide investigator that Garrison was involved in a homicide incident on December 22, 2015. Sergeant Waguespack explained that Garrison was found to be associated with a 9 mm handgun used in the December 22, 2015 shooting incident, and the casings from that shooting matched the casings found at each of the three robbery scenes and were determined to have been fired from the same weapon. Following this development, photographic lineups containing co-defendant Garrison were shown to the three victims. Mr. Diaz was the only victim who positively identified Garrison as one of the perpetrators.
Sergeant Waguespack also testified that defendant was developed as a suspect based on a December 9, 2015 drive-by shooting incident involving Curvin Nash. When Sergeant Waguespack showed photographic lineups containing defendant's photograph to the three victims, Mr. Diaz *1027 and Mr. Galeas identified defendant. Also, Sergeant Waguespack explained that another reason defendant was developed as a suspect was his connection to a shooting incident on December 7, 2015, at the RaceTrac on Manhattan Boulevard. While no suspects were identified in that shooting incident, defendant was field-interviewed during the investigation due to his close proximity to the scene.[9] Ballistics casings recovered from the scene of the RaceTrac shooting matched those casings recovered from the scenes of the armed robbery and attempted armed robberies on December 11, 2015.
Ballistics Evidence
Jene Rauch of the Jefferson Parish Crime Laboratory testified as an expert in firearms and toolmark examination, shooting incident reconstruction, and crime scene investigation. Ms. Rauch analyzed materials collected from the November 23, 2015 homicide of Mr. Lutcher, the December 7, 2015 shooting at RaceTrac, the December 9, 2015 drive-by shooting involving Mr. Nash, the three December 11, 2015 armed robbery and attempted armed robberies, and the December 22, 2015 shooting incident, in which Ms. Joseph was killed and co-defendant Garrison was wounded.
Based on her analysis of the ballistics material, Ms. Rauch concluded that the 9 mm casings recovered from the homicide of Mr. Lutcher were fired from the same 9 mm handgun as the casings found at the scene of the drive-by shooting involving Mr. Nash on December 9, 2015. Ms. Rauch further concluded that the ballistics material recovered from the RaceTrac shooting on December 7, 2015, and the armed robbery and attempted armed robberies on December 11, 2015, were all fired from the same 9 mm handgun that fired the ballistics material recovered from the December 22, 2015 shooting incident involving the wounding of co-defendant Garrison.
Possession of a firearm by a convicted felon (count nine)
The State and defense stipulated that defendant had a prior conviction for possession of cocaine, a felony violation of La. R.S. 40:967(C), from March 17, 2011, in Jefferson Parish.
SUFFICIENCY OF THE EVIDENCE
On appeal, defendant challenges the sufficiency of the evidence used to convict him on all counts. He specifically maintains that the State failed to negate any reasonable probability of misidentification.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Baham , 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, writ denied , 15-40 (La. 3/24/16), 190 So.3d 1189.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not *1028 required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. State v. Baham , 169 So.3d at 566.
It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley , 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied , 03-2745 (La. 2/13/04), 867 So.2d 688. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Joseph , 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, 1043, writ denied , 17-77 (La. 4/7/17), 218 So.3d 109.
In the present case, defendant was convicted of one count of second degree murder, one count of conspiracy to commit armed robbery, two counts of attempted armed robbery with a firearm, two counts of illegal use of weapons, one count of armed robbery with a firearm, and one count of possession of a firearm by a convicted felon. In challenging the sufficiency of the evidence used to convict him of these offenses, defendant does not contest the sufficiency of the essential statutory elements;[10] rather, he challenges his identity as the perpetrator and asserts that the State failed to negate any reasonable probability of misidentification.[11]
Second degree murder of Bruce Lutcher on November 23, 2015 (count one); illegal discharge of a firearm on December 9, 2015 (count ten); possession of a firearm by a convicted felon (count nine)
On appeal, defendant contends that the State failed to present the testimony of a single eyewitness to the murder of Mr. Lutcher. He further asserts that because Curvin Nash recanted his statement accusing defendant and co-defendant Garrison of committing the drive-by shooting on December 9, 2015, the casings found at the scene of the drive-by shooting cannot be used as evidence to link them to the Lutcher murder. Additionally, he maintains that Marcques Joseph's testimony is insufficient to support his murder conviction, noting that Mr. Joseph did not witness the shooting and that he changed his testimony about who told him the murder was "his work." Next, defendant asserts that because Mr. Nash recanted his prior *1029 statement made to Detective Goff, there is insufficient evidence to support his conviction for illegal discharge of a firearm and possession of a firearm on December 9, 2015. For the reasons that follow, we find no merit to these arguments.
On November 23, 2015, at approximately 9:40 p.m., Mr. Lutcher received a phone call and left the apartment that he shared with his girlfriend, Ms. Gilds. When Mr. Lutcher did not return within a short period of time, Ms. Gilds became concerned and tried to call him. When Mr. Lutcher did not answer, Ms. Gilds asked a friend, Shantrell Johnson, to call him, but once again, he did not answer. Mr. Lutcher eventually returned Ms. Johnson's call, and when Ms. Johnson did not answer, a voicemail message was recorded. Shortly thereafter, Ms. Gilds heard her doorbell ring and then heard footsteps on the stairs and multiple gunshots. Ms. Gilds called 9-1-1, and while waiting for police to arrive, she opened the door and observed Mr. Lutcher unresponsive at the bottom of the stairs.
When Detective Goff arrived on the scene, she observed that Mr. Lutcher's pockets had been turned inside out and that his wallet and cell phone were missing, causing her to conclude that Mr. Lutcher had been the victim of a robbery. Although no suspects were immediately developed, after listening to the voicemail recording made from Mr. Lutcher's cell phone at 11:42 p.m., the time of the shooting, Detective Goff came to the conclusion that a minimum of two suspects were involved.
During the course of her investigation into this murder, Detective Goff was informed that the 9 mm shell casings from a drive-by shooting on December 9, 2015, and the murder of Mr. Lutcher were fired from the same gun. Thereafter, Detective Goff interviewed Curvin Nash, one of the individuals present at the scene of the drive-by shooting. According to Detective Goff, Mr. Nash identified defendant and co-defendant in photographic lineups as the individuals who shot at him.
The jury also heard testimony from Mr. Joseph that on the night Mr. Lutcher was murdered, he saw defendant and co-defendant Garrison walking up the street with guns in their hands, towards Mr. Lutcher. Further, Mr. Joseph testified that during the course of a conversation, defendant advised him that the murder was "his work." In addition to this testimony, the jury also heard that less than an hour before he was murdered, Mr. Lutcher received phone calls from a number found to be associated with defendant. Additionally, less than twenty minutes after Mr. Lutcher's murder, outgoing calls were placed to defendant's girlfriend by the same phone known to be associated with defendant.
In contrast to this testimony, the jury heard about Mr. Nash's recantation of his statements accusing defendant and co-defendant Garrison of shooting at him on December 9, 2015. The jury also heard that Mr. Joseph did not witness the November 23, 2015 shooting of Mr. Lutcher, that he changed his testimony about who told him the murder was "his work," and that he did not speak to police about what he had observed until his interview with Detective Goff, which was subsequent to his cousin's murder on December 22, 2015. Additionally, the jury heard about the existence of a potential witness, Ms. Davis, who allegedly observed the victim and one perpetrator on the night of Mr. Lutcher's murder and was further made aware that the police did not contact this witness for possible identification of the perpetrator.
The jury heard this conflicting testimony and obviously chose to accept the testimony pointing to defendant as one of the *1030 perpetrators. As previously noted, the trier of fact can accept or reject, in whole or in part, the testimony of any witness. It is not the appellate court's function to re-evaluate the credibility of witnesses or reweigh the evidence. State v. Bradley , 858 So.2d at 84.
Based on the evidence presented at trial, we find that the State negated any reasonable probability of misidentification and that any rational trier of fact could have found that the State proved beyond a reasonable doubt that defendant was guilty of the offenses occurring on November 23, 2015, and December 9, 2015.
Armed robbery of Jose Galeas and attempted armed robberies of Franklin Diaz and Fausto Alvarez (counts three, five, and seven); conspiracy to commit armed robbery (count two); felon in possession of a firearm (count nine); and illegal discharge of firearm while attempting to commit an armed robbery (count four), on December 11, 2015
With regard to these offenses, defendant contends the identifications made by Franklin Diaz, Fausto Alvarez, and Jose Galeas concerning the incidents on December 11, 2015, are unreliable, noting that the victims could not have gotten a good look at the perpetrators. Further, defendant asserts that because the State failed to negate any reasonable probability of misidentification, the evidence was insufficient to support his convictions for armed robbery, attempted armed robbery, conspiracy to commit armed robbery, illegal discharge of a weapon, and possession of a weapon by a felon on that date.
On December 11, 2015, three armed or attempted armed robberies of Hispanic men occurred within a span of one hour on the west bank of Jefferson Parish. Each of the three victims testified at trial. The first victim, Franklin Diaz, testified that he was robbed at gunpoint by two black men. He testified that one of the assailants was tall and the other was short. Both in photographic lineups and at trial, Mr. Diaz positively identified defendant as the tall assailant who pointed a gun at him and demanded his money and co-defendant Garrison as the short assailant who served as the "lookout."
The second victim, Fausto Alvarez, testified similarly to Mr. Diaz, describing the two assailants who approached him as two black men, one short and one tall. Mr. Alvarez further testified that when he was unable to provide the assailants with any money, the shorter of the two shot him in the stomach before fleeing. While Mr. Alvarez was unable to identify his assailants from photographic lineups, he did make an in-court identification of defendant as one of the men who attempted to rob him.
Finally, the third victim, Jose Galeas, testified that he was robbed at gunpoint by two black men, one short and one tall. He recalled that the shorter of the two assailants pointed a gun at him while the taller man, whom he later identified from a photographic lineup as defendant, took his wallet containing over $400.00. Both Mr. Diaz and Mr. Galeas further described defendant as having dreadlocks at the time the crimes were committed. In addition, casings collected from each of the crime scenes were determined to have been fired from the same weapon.
Based on this testimony, we find that the State negated any reasonable probability of misidentification in connection with the December 11, 2015 offenses. As noted by the State, any issues relating to the reliability of the identifications were presented to the jury, who made a credibility determination in favor of the State's witnesses. Since it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence, we find that any rational trier of fact could have *1031 found that the State proved beyond a reasonable doubt that defendant was guilty of the December 11, 2015 offenses.
Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence are without merit.
ADMISSION OF OTHER CRIMES EVIDENCE
In his second assignment of error, defendant argues that the trial court abused its discretion in granting the State's motion to introduce evidence of other crimes pursuant to La. C.E. art. 404(B). Specifically, defendant challenges the trial court's admission of evidence relating to a shooting incident on December 22, 2015, in which a teenage girl, Sharamie Joseph, was shot and killed by a stray bullet and co-defendant Garrison was shot and wounded.
La. C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), certain requirements must be met. First, pursuant to State v. Prieur , 277 So.2d 126 (La. 1973), the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. State v. Le , 13-314 (La. App. 5 Cir. 12/12/13), 131 So.3d 306, 317. Additionally, one of the factors listed in La. C. E. art. 404(B) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson , 625 So.2d 146, 149 (La. 1993). Further, the State must prove that the defendant committed the other acts by a preponderance of the evidence. Huddleston v. United States , 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988) ; State v. Hernandez , 98-448 (La. App. 5 Cir. 5/19/99), 735 So.2d 888, 898-99, writ denied , 99-1688 (La. 11/12/99), 750 So.2d 194. Finally, the probative value of the extraneous evidence must outweigh its prejudicial effect. State v. Page , 08-531 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, 451, writ denied , 09-2684 (La. 6/4/10), 38 So.3d 299.
The burden is on the defendant to show that he was prejudiced by the admission of other crimes evidence. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. State v. Le , 131 So.3d at 317.
In the present case, prior to trial, the State filed a notice of intent to use evidence of other bad acts pursuant to La. C.E. art. 404(B), seeking to introduce evidence of a shooting incident that occurred on December 22, 2015, which resulted in the death of a teenage girl and the wounding of co-defendant Garrison. It was the State's contention that co-defendant Garrison was a participant in the December 22, 2015 shooting during which the same firearm utilized by defendant and co-defendant Garrison in the December 11, 2015 armed robbery and attempted armed robberies *1032 was used. Because ballistics testing revealed that the same gun was used on both dates, the State intended to introduce evidence of the December 22, 2015 incident to establish "the defendants' identities as the perpetrators" of the crimes committed on December 11, 2015, "their opportunity to commit the charged offenses, the absence of any mistake or accident in their discharge of the firearms in each of the three December 11, 2015 robbery incidents, and the specific intent to kill a victim left paralyzed during one of the December 11, 2015 robbery incidents."
After a hearing on January 23, 2017, the trial court ruled that the December 22, 2015 shooting incident was admissible under La. C.E. art. 404(B) because "the defendants are, in fact, identified, it is the exact same weapon, it shows lack of mistake, lack of knowledge, system and intent." Defendant now challenges the trial court's admission of this evidence on two grounds.
First, defendant contends that this evidence was improperly admitted at trial because the State failed to prove by a preponderance of the evidence that co-defendant Garrison was the person who fired one of the two weapons used during the December 22, 2015 shooting incident. We find this assertion to be without merit.
At trial, the State presented the testimony of Detective Goff and Sergeant Waguespack regarding the retaliatory shooting that occurred on December 22, 2015, at the apartment complex frequented by defendant and co-defendant Garrison. According to the testimony, on that day, Mr. Levier, who was present at the December 9, 2015 drive-by shooting, drove to the apartment complex where defendant was staying and shot co-defendant Garrison in the stomach. During this shooting incident, a teenage girl sitting in the adjoining apartment was shot and killed by a stray bullet. Witness Marcques Joseph testified that after the shooting, he observed co-defendant Garrison running through the parking lot while Mr. Levier's car sped away from the scene. By stipulation of the parties, co-defendant Garrison's father confirmed that on December 22, 2015, his son was shot by Mr. Levier.
At trial, the State presented the expert testimony of Jene Rauch who performed a crime scene reconstruction of the December 22, 2015 shooting and established that there were two shooters on the scene that evening. She explained that Ms. Joseph was shot and killed inside her apartment by a stray bullet fired from the street by someone using a .22 caliber weapon. Ms. Rauch further concluded there to be a second mobile shooter on the scene who fired .38 caliber ammunition from a 9 mm handgun toward the street from inside the stairwell of the apartment complex. The twenty-two casings found inside the stairwell and on the sidewalk near the apartment were fired from the same weapon that discharged the casings recovered at the scene of the armed robbery and attempted armed robberies on December 11, 2015.[12] While no weapons were recovered, Detective Goff opined there to be sufficient distance between the location where co-defendant Garrison was shot and co-defendant's residence that if co-defendant Garrison had departed the scene of the shooting in possession of a firearm, he would have had sufficient opportunity to dispose of the weapon before reaching his residence.
*1033 In the present case, while primarily circumstantial in nature, the evidence presented by the State was sufficient to prove by a preponderance of the evidence that co-defendant Garrison was the second mobile shooter who fired shots back at Mr. Levier on December 22, 2015.[13]
Second, defendant argues that the evidence of the December 22, 2015 shooting incident was more prejudicial than probative, and therefore, the trial court erred in allowing the admission of evidence regarding this unrelated shooting at trial. We likewise find no merit to this argument. In the present case, the evidence of the December 22, 2015 shooting incident was highly probative of identity. Further, as previously noted, the burden is on defendant to show that he was prejudiced by the admission of this evidence. State v. Le , 131 So.3d at 317. Defendant has failed in meeting that burden. In fact, as discussed in footnote thirteen of this opinion, there was no evidence presented to the jury that defendant was present at or participated in the December 22, 2015 shooting. Additionally, regardless of whether or not this evidence was properly admitted, after this evidence was presented by the State, defendant was able to utilize this evidence to establish a motive for Mr. Joseph's damaging testimony in this case regarding the murder of Mr. Lutcher.
Further, this Court, in State v. Fair , 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, writ denied , 16-0185 (La. 2/3/17), 215 So.3d 688, when faced with arguments similar to those raised herein, found that the trial court properly allowed the admission of the other crimes evidence. In Fair , the defendant, who was on trial for murder, argued on appeal that the trial court erred in allowing the State to present evidence of a previous unrelated shooting in which defendant was the victim. As in this case, the defendant in Fair argued that the State failed to prove that he committed the other crimes, wrongs, or acts, and further argued that the evidence was more prejudicial than probative. This Court found no abuse of discretion in the trial court's admission of evidence of the previous shooting, noting that the defendant was shot during the prior incident while standing on the porch where the casings, which matched those related to the homicide, were recovered. This Court further noted that the investigation into the unrelated shooting incident revealed two sets of spent casings, which was consistent with two weapons being fired during the incident, thereby concluding that the State proved by a preponderance of the evidence that the defendant committed the other act. This Court also rejected the defendant's argument that the other crimes evidence was more prejudicial than probative, finding the matching casings to be highly probative of identity.
Based on the foregoing, we find no abuse of discretion in the trial court's admission of the December 22, 2015 shooting incident. Nevertheless, even if improperly *1034 admitted, the erroneous admission of other crimes evidence is subject to harmless error analysis. The test for determining if an error was harmless is whether the verdict actually rendered in the trial was surely unattributable to the error. State v. Joseph , 208 So.3d at 1047-48.
In the instant case, even without the admission of the December 22, 2015 shooting incident, the evidence presented by the State was sufficient to prove defendant's guilt as to the armed robbery and attempted armed robberies on December 11, 2015. As previously discussed in the first assignment of error, the victims of the armed robbery and attempted armed robberies positively identified defendant as one of the two assailants who robbed or attempted to rob them on the evening of December 11, 2015. Given these positive identifications, the guilty verdicts concerning the armed robbery and attempted armed robberies were surely unattributable to any alleged error in admitting the shooting incident from December 22, 2015.
In light of the foregoing, we find no merit to the arguments advanced by defendant in this assigned error.
ERRORS PATENT REVIEW
We have also reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). Our review of the record reveals no errors that warrant corrective action.
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences.
AFFIRMED

Co-defendant Garrison was charged along with defendant in counts one, two, three, five, seven, and ten and alone in count six (attempted second degree murder of Fausto Alvarez, in violation of La. R.S. 14:27 and 14:30.1 ) and count eight (illegal use of a weapon while committing an armed robbery, in violation of La. R.S. 14:94(F) ). Although the two defendants were tried together, this appeal relates only to Corey Flag.

Mr. Lutcher eventually returned Ms. Johnson's phone call, and when Ms. Johnson did not answer, a voicemail message was recorded.

At trial, Dr. Dana Troxclair, an expert forensic pathologist, testified that Mr. Lutcher died from multiple gunshot wounds, some of which were sustained while Mr. Lutcher had his hands up in a defensive position.

At trial, David Cox of the Jefferson Parish Sheriff's Office DNA Laboratory testified that both defendant and co-defendant Garrison were excluded as contributors to the DNA mixtures found on the cuttings taken from Mr. Lutcher's pockets.

Ms. Davis' first name was not provided at trial.

Mr. Joseph is the cousin of Sharamie Joseph, who was killed by a stray bullet in a shooting incident that occurred on December 22, 2015. Evidence regarding this shooting is the subject of Assignment of Error Number Two.

At trial, Detective Goff denied making any deals with Mr. Nash in exchange for his identifications, but she acknowledged that she was aware that he was trying to cooperate with the Narcotics Division to "work off his charges." She maintained that she did not tell Mr. Nash who to identify in the lineups.

The State and defense stipulated that if co-defendant Garrison's father were to testify, he would state that on the night of December 22, 2015, his son came into their house with a gunshot wound and told him he had been shot by Mr. Levier.

Although evidence concerning the December 7, 2015 incident at the RaceTrac had previously been ruled inadmissible under La. C.E. art. 404(B), the trial court permitted the State to question Sergeant Waguespack concerning the incident on the ground that defense counsel "opened the door to it."

Because defendant does not raise any arguments relating to the sufficiency of the evidence with respect to the statutory elements, we need not address the evidence as it relates to each essential element. See State v. Nelson , 14-252 (La. App. 5 Cir. 3/11/15), 169 So.3d 493, 500, writ denied , 15-685 (La. 2/26/16), 187 So.3d 468. Nevertheless, a review of the record under State v. Raymo , 419 So.2d 858, 861 (La. 1982), reflects that the State presented sufficient evidence under the Jackson standard to establish the essential statutory elements of the crimes for which defendant was convicted.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ray , 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied , 13-1115 (La. 10/25/13), 124 So.3d 1096.

The ballistics material from both the December 11, 2015 and December 22, 2015 incidents also matched the casings found at a shooting incident on December 7, 2015, where defendant was field-interviewed due to his close proximity to the scene of the shooting.

In our opinion, we addressed and found no merit to defendant's specific argument that the State failed to prove that co-defendant Garrison was one of the shooters in the December 22, 2015 incident. However, with regard to defendant Flag, we note that there was no evidence presented to suggest that he participated in or was present at the December 22, 2015 incident. Therefore, we do not necessarily agree that this issue, as it pertains to this defendant, was one of the improper admission of other crimes evidence. Regardless, the evidence of the December 22, 2015 shooting was relevant to show the progression of the investigation in this case as well as the connection of the firearm to the December 11, 2015 crimes, in which defendant was positively identified as one of the perpetrators. Thus, the evidence was properly admitted, as to this defendant, pursuant to La. C.E. arts. 401 -403.